Delina **CAMPBELL,** Petitioner,

v.

Edwin A. **SCHROERING,** Jr., Judge, Jefferson Circuit Court, Respondent.

No. 88–CA–2250–OA.

Court of Appeals of Kentucky.

Dec. 22, 1988.

1. *See generally* Uniform Child Custody Jurisdiction Act, KRS 403.400–.620.

been subpoenaed as a witness for the prosecution in the case of *Commonwealth v. Robert Campbell*, Indictment No. 88–CR–0155; the defendant is the petitioner's son. We are led to believe that petitioner's testimony was crucial to the Commonwealth in proving its case against her son, the defendant.[1] On September 29, 1988, when the Commonwealth attempted to call the petitioner to the stand, she could not be found. The circuit court issued an order directing any peace officer to arrest the petitioner and bring her before the court. The case was continued until October 6, 1988. At that time, the commonwealth's attorney informed the court that he had spoken with the petitioner and determined that her earlier failure to appear had been the result of a misunderstanding rather than a willful refusal to testify. He had therefore told the police not to execute the arrest order as she had agreed to appear that day at 1:00 p.m. By 2:30 p.m., the petitioner had not yet appeared and the defendant moved for a directed verdict of acquittal. The circuit court granted the defendant's motion and brought the jury back in to discharge it. At this point, the commonwealth's attorney was informed that the petitioner had appeared. The circuit court once again sent the jury out of the courtroom; it then set aside its ruling on the directed verdict and told the Commonwealth to call the petitioner as a witness.

Meanwhile, apparently a confrontation occurred outside the courtroom between the petitioner and her son in the presence of the waiting jurors. The exact nature of the confrontation was disputed; regardless, the defendant's motion for a mistrial was granted and the jury was discharged.

A new trial was scheduled for November 29, 1988.[2] The commonwealth's attorney offered to have the petitioner swear that she would reappear, to which the circuit court responded, "She's not going to swear to anything. She's going to wait in jail"

Frank William Heft, Jr., Michael C. Lemke, Louisville, for petitioner.

Edwin A. Schroering, Louisville, pro se.

Before McDONALD, HOWARD and WILHOIT, JJ.

McDONALD, Judge.

This original action involves the propriety of an order entered by the respondent, Judge Edwin A. Schroering, Jr., Jefferson Circuit Court, directing that petitioner Delina Campbell be incarcerated, purportedly upon a finding that she was in contempt of court for failing to appear to testify.

The facts giving rise to this action are somewhat muddled. The petitioner had

---

1. Petitioner's live-in companion, the victim herein, was shot five times, allegedly by the petitioner's son.

2. Upon a motion of the defendant, the trial has been continued to February 28, 1989.

until the trial.[3] Only then was the petitioner sworn in as a witness and questioned by the respondent regarding the reasons for her failure to timely appear. Despite the fact that one of the defense attorneys present suggested it, petitioner was not asked whether she wanted counsel. Toward the end of the inquiry, the respondent asked the petitioner about certain bruises on her face, to which she replied that she had run into a door. The respondent then ordered that the petitioner be taken into "protective custody" and held in jail until the case in question could be tried. However, the circuit court's written order directing that the petitioner be jailed states, for the first time, that she was in contempt of court. Bond was set at $5,000 full cash, which petitioner was unable to satisfy.

On October 17, 1988, this Court ordered, pursuant to her motion for immediate relief, that petitioner be released pending consideration of the merits of this action.

■ The petitioner maintains that respondent's actions in ordering her jailed were improper for a number of reasons. First, she argues that the trial in question cannot take place because a directed verdict had already been granted. She also claims that she is herself a suspect of the crime involved and, as such, cannot be compelled to testify in violation of her Fifth Amendment right against self-incrimination. We are unpersuaded by these arguments. This Court agrees with the respondent's conclusion that he was empowered to set aside his order because the jury had not yet been discharged. Furthermore, the petitioner made no attempt to invoke the protection of the Fifth Amendment before the circuit court, and we do not believe that it can now shield her from a finding of contempt.

The petitioner's other arguments have more merit. We must note, first of all, that we agree with the respondent's position that "it is essential that Courts be able to compel the appearance and testimony of witnesses." We also agree that courts must be vested with a great deal of discretion to achieve that end. *See* CR 45.06, applicable herein under RCr 13.04. However, this discretion is not limitless and it does not extend to summarily jailing witnesses for future trials.[4] There are established mechanisms which the trial court may use to coerce a recalcitrant witness into appearing or testifying. The court has a great deal of flexibility and power in determining how to use these, but in doing so it may not circumvent certain rules.

■ One of these methods, of course, is the contempt sanction. The respondent's position is that the petitioner's incarceration fell within his discretion to hold a witness in civil contempt. We are of the opinion that the respondent confuses civil with criminal contempt and has attempted to mesh these in a way which accomplishes the purposes of neither. Respondent correctly points out that " '[i]t is not the fact of punishment but rather its character and purpose that often serve to distinguish' civil from criminal contempt." *Shillitani v. United States*, 384 U.S. 364, 369, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). Thus, if respondent's purpose was primarily to punish the petitioner for her tardiness, the sanction would more properly be characterized as criminal contempt—unconditional incarceration for punitive purposes. Before incarcerating someone for criminal contempt, some sort of due process is required, including representation by counsel and, if the charge is serious enough, a jury trial. *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). *See also Payne v. Commonwealth*, Ky.App., 724 S.W.2d 230 (1987), for a good analysis of the problem.

The purpose of civil contempt, on the other hand, is "to coerce, rather than punish." *Shillitani*, 384 U.S. at 370, 86 S.Ct.

---

**3.** The Commonwealth did not move for any sanction or contempt proceeding against the petitioner nor did the Commonwealth join in the circuit court's own motion and order against the petitioner.

**4.** It is patently clear from viewing the videotaped record of the proceedings that the circuit judge was acting in good faith with great concern for the petitioner's welfare under suspicious and uncertain conditions.

at 1535. "While any imprisonment, of course, has punitive and deterrent effects, it must be viewed as remedial if the court conditions release upon the contemnor's willingness to testify." *Id.* Ultimately, then, the defining characteristic of civil contempt is the fact that contemnors "carry 'the keys of their prison in their own pockets,'" *id.* at 368, 86 S.Ct. at 1534.[5] Herein lies the flaw, as we see it, in respondent's order. The petitioner was ordered incarcerated on October 6, 1988, there to remain until the retrial on November 29, 1988, now by order of court on February 28, 1989. Between these two dates she had absolutely no opportunity to purge herself of contempt, if in reality contempt was the true basis of the incarceration. In essence, this was an unconditional jail sentence of 55 days, and now even more because of the continuance. "Such imprisonment could be deemed punitive in character and in the nature of a proceeding for criminal contempt, quite possibly running afoul of the requirements of *Bloom v. Illinois* [*supra*]." *Hardin v. Summitt*, Ky., 627 S.W. 2d 580, 582 (1982), and *Payne v. Commonwealth, supra.*

The respondent points out that this Court, in *Woods v. Commonwealth*, Ky. App., 712 S.W.2d 363, 365 (1986), declared the Kentucky contempt statute[6] unconstitutional "in that it binds the hands of the trial court whether its purpose is to punish a witness for refusing to testify or to coerce that witness to testify and purge himself of his contempt of court." In our opinion, the *Woods* case does not control. In *Woods* the witness refused to be sworn or to testify. Those are not our facts. The petitioner herein, for whatever reason, failed to timely appear in response to a

subpoena. Petitioner's excuse was never established. The United States Supreme Court unequivocally held that a civil contemnor cannot be incarcerated beyond the opportunity to purge himself of his contempt. *Shillitani*, 384 U.S. at 371, 86 S.Ct. at 1536. The Supreme Court further explained:

> The objection that the length of imprisonment thus depends upon fortuitous circumstances, such as the life of the grand jury and when a witness appears, has no relevance to the present situation. That argument would apply only to unconditional imprisonment for punitive purposes, which involves different considerations.

*Id.* at 371–72, 86 S.Ct. at 1536.

The respondent additionally claims that the petitioner's incarceration was not merely punitive or even coercive but for her own physical protection, although the petitioner denied the need for such protection. The respondent cites no authority which would empower him to take a witness into protective custody beyond the "inherent power" of the court to "guarantee that the witness would not be further abused and would appear at the trial." In fact, there is a statute which addresses this situation. RCr 7.06 provides:

> Indispensable witness.—(1) If it appears by affidavit in any criminal proceeding that the testimony of a person is indispensable and that there are reasonable grounds to believe that it will be impracticable to secure his attendance by subpoena, the court may issue an order to any peace officer to bring the witness before the court. A hearing shall then be held without unnecessary delay at which the witness shall be present *and*

**5.** *Crook v. Schumann*, 292 Ky. 750, 167 S.W.2d 836 (1942), makes this distinction: "They are for civil contempt because of the disobedience of orders intended to preserve and to enforce adjudged rights of private parties to suits. As such, the judgments are distinguishable from judgments of criminal contempt." *Allen v. Black Bus Lines*, 291 Ky. 278, 164 S.W.2d 482, 483 (1942), offers this advice: "The contempt proceeding was instituted by the plaintiffs and was solely in aid of their rights, and the contempt judgment was intended as a coercive measure to enforce the order theretofore entered in

their favor. The proceeding therefore, under our decisions, is civil in its nature."

**6.** Kentucky Revised Statute 421.140, which reads: "If a witness refuses to testify, or to be sworn, or to give a deposition, he shall be imprisoned so long as he refuses, or until he testifies before an officer who is authorized to take his testimony. The final disposition of the case in which he so refuses shall discharge him from imprisonment."

*represented by counsel unless waived,* and the court may require him to give bail for his appearance as a witness.... If he fails to give bail, the court may commit him to custody pending a final disposition of the proceeding in which the testimony is needed.

. . . . .

(2) If such witness is committed for failure to give bail, the court on written motion of the witness and upon notice to the parties may direct that his deposition be taken. After the deposition has been taken the court shall discharge the witness. [emphasis added]

■ We agree with the respondent regarding the importance of ensuring that witnesses appear at criminal trials, and we agree that when necessary the trial court must be able to exercise its power to coerce their attendance. However, "a court must exercise '[t]he least possible power adequate to the end proposed,'" *Shillitani,* 384 U.S. at 371, 86 S.Ct. at 1536, in part because of "the potential for abuse in exercising the summary power to imprison for contempt—it is an 'arbitrary' power which is 'liable to abuse.'" *Bloom,* 391 U.S. at 202, 88 S.Ct. at 1482. We think that RCr 7.06 gives the court ample power, upon motion supported by affidavit, to ensure the presence of witnesses necessary for a fair trial. By instead citing its own "inherent power," the court denied the petitioner the rule's safeguards—namely, representation by counsel and an opportunity to terminate one's incarceration by giving a deposition. We are of the opinion that the petitioner's incarceration resulted from an abuse of judicial discretion, although the court was acting in good faith.

In conclusion, having considered the petition for writ of prohibition, the response thereto, and the available record, this Court ORDERS the petition be GRANTED. Respondent is PROHIBITED from enforcing his order of October 6, 1988.

All concur.