COMMONWEALTH of Kentucky,
Appellant,

v.

Roger Keith BURGE, Appellee,

and

Gary E. HERRIFORD, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee,

and

COMMONWEALTH of Kentucky,
Appellant,

v.

Kenny EFFINGER, Appellee.

Nos. 92–SC–287–DG, 92–SC–873–
TG and 92–SC–896–TG.

Supreme Court of Kentucky.

Aug. 29, 1996.

As Modified on Denial of Rehearing
June 19, 1997.

Wallace N. Rogers, Mulhall, Turner, Hoffman & Coombs, Louisville, for Roger Keith Burge.

Daniel T. Goyette, Louisville, Frank W. Heft, Jr., Chief Appellate Defender of the Jefferson District Public Defender, Louisville, for Gary E. Herriford and Kenny Effinger.

A.B. Chandler, III, Attorney General, Lana Grandon, Todd D. Ferguson, Assistant Attorneys General, Criminal Appellate Division, Frankfort, John Balliet, Special Assistant Attorney General, C. Lloyd Vest, II, Assistant Attorney General, Louisville, for Commonwealth of Kentucky.

## OPINION OF THE COURT

We have consolidated these appeals because they present the common issue of whether a finding of criminal contempt for violation of a domestic violence order [hereinafter DVO], issued pursuant to KRS 403.750, or for violation of a restraining order issued in a dissolution of marriage case, can bar a criminal prosecution on double jeopardy grounds. In each case, the individual involved was sentenced to a term of imprisonment on the contempt citation.

### THE FACTS—NO. 92–SC–287–DG

Roger Burge was convicted of burglary, rape, and sodomy, all in the first degree. At the time of the event that led to these charges, Burge was subject to a restraining order issued by the Jefferson Circuit Court in a pending dissolution of marriage action. The restraining order prohibited Burge from going about or entering the house occupied by his wife, and from threatening, assaulting, or otherwise interfering with her. By entering the marital residence Burge violated that restraining order. He was found in contempt and sentenced to ninety (90) days in jail. Burge was then indicted on charges of burglary, rape, and sodomy. The burglary charge was founded on Burge's entry into the marital home and assault on his wife. Trial counsel moved for dismissal of the burglary charge on double jeopardy grounds, contending that Burge's conviction for contempt precluded his subsequent prosecution. The motion was denied, but the Court of Appeals reversed, relying upon *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). We granted discretionary review[1].

### THE FACTS—NO. 92–SC–873–TG

Gary Herriford's wife obtained a DVO, which provided that he was restrained from committing further acts of violence and abuse and from disposing of, or damaging, any of their property. Less than one (1) month later, Herriford was found in contempt of court for having violated the DVO by entering his wife's apartment, then striking her with a bottle and causing injury. He was sentenced to six (6) months in the Home Incarceration Program, and granted work release.

Herriford was then indicted by the Jefferson County Grand Jury, which charged him with assault in the second degree by inten-

---

1. Appellant does not challenge his rape and sodomy convictions in this Court.

tionally causing physical injury to his wife by means of a deadly weapon or dangerous instrument. It is clear that the criminal charge arose from the same assault that resulted in the contempt of court sentence, as the bill of particulars indicated that the dangerous instrument was a bottle. Herriford moved for dismissal on double jeopardy grounds, but his motion was denied. He then entered a conditional guilty plea to a reduced charge of assault under extreme emotional disturbance, and a sentence of three (3) years was imposed. Herriford's appeal was transferred to this Court.

### THE FACTS—NO. 92–SC–896–TG

Kenny Effinger was charged with first-degree assault and retaliating against a witness for entering Tonya Madry's apartment and striking her with a metal pipe on August 3, 1991. Prior to this act, on July 15, 1991, a DVO had been issued, which restrained Effinger from committing further acts of violence and abuse, and ordered that he was to have no contact with Madry. On August 12, 1991, Effinger was held in contempt of court for violation of the DVO and sentenced to six (6) months in jail. He was then indicted by the Jefferson County Grand Jury for, among other offenses, the crimes at issue. A review of the affidavit filed by Madry in support of the contempt hearing, and the hearing itself, reveals that the criminal charges and the contempt proceeding were grounded on the same incident. Effinger's motion to dismiss on double jeopardy grounds was granted by the circuit court. The Commonwealth appealed, and the appeal was transferred to this Court.

### CONTEMPT: Criminal v. Civil

Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court. "Contempts are either civil or criminal." *Gordon v. Commonwealth*, 141 Ky. 461, 463, 133 S.W. 206, 208 (1911). Civil contempt consists of the failure of one to do something under order of court, generally for the benefit of a party litigant. Examples are the willful failure to pay child support as ordered, or to testify as ordered.

While one may be sentenced to jail for civil contempt, it is said that the contemptuous one carries the keys to the jail in his pocket, because he is entitled to immediate release upon his obedience to the court's order. *Campbell v. Schroering*, Ky.App., 763 S.W.2d 145, 148 (1988).

Criminal contempt is conduct "which amounts to an obstruction of justice, and which tends to bring the court into disrepute." *Gordon, supra*, 141 Ky. at 463, 133 S.W. at 208. " 'It is not the fact of punishment but rather its character and purpose, that often serve to distinguish' civil from criminal contempt." *Shillitani v. United States*, 384 U.S. 364, 369, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627 (1966) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806 (1911)). If the court's purpose is to punish, the sanction is criminal contempt.

Criminal contempt can be either direct or indirect. A direct contempt is committed in the presence of the court and is an affront to the dignity of the court. It may be punished summarily by the court, and requires no fact-finding function, as all the elements of the offense are matters within the personal knowledge of the court. *In re Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). Indirect criminal contempt is committed outside the presence of the court and requires a hearing and the presentation of evidence to establish a violation of the court's order. It may be punished only in proceedings that satisfy due process. *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925).

In each of the cases at bar, the defendant was punished for behavior which occurred outside the presence of the court. Notice of the allegations was given, witnesses were called in open court with the opportunity to confront same, and the defendant had the right to present proof. The trial court made findings of fact, and concluded that the defendant's behavior was indeed contemptuous. Punishment was then imposed. It is clear that the defendants herein were charged with, and found in, criminal contempt as that term is classically understood.

## DOUBLE JEOPARDY

The double jeopardy clause of the Fifth Amendment to the United States Constitution provides in pertinent part that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Kentucky's Constitution includes a virtually identical provision in § 13. In *Cooley v. Commonwealth*, Ky., 821 S.W.2d 90, 93 (1991), we acknowledged that, by and large, we have followed the decisions of the Supreme Court of the United States and have interpreted § 13 of the Kentucky Constitution as affording protections which parallel those guaranteed by the Fifth Amendment. Therefore, the United States Supreme Court's decisions are germane to an analysis of double jeopardy under both the Federal and this Commonwealth's Constitution.

■■■ Double jeopardy does not occur when a person is charged with two crimes arising from the same course of conduct, as long as each statute "requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). KRS 505.020(1)(a) and (2)(a) codify this rule. The *Blockburger* rule was expanded by the United States Supreme Court in *Grady v. Corbin, supra*, wherein that Court held that double jeopardy occurs when the "same conduct" constituting one offense is used to prove an essential element of another offense. *Grady* was a vehicular homicide case in which the defendant had entered a guilty plea to the offense of driving while under the influence of alcohol (DUI), then was prosecuted for reckless manslaughter in a separate proceeding. Under the *Blockburger* "same elements" test, the defendant could have been convicted of both offenses, because the DUI offense contained an element (intoxication) which was not a statutory element of reckless manslaughter; and reckless manslaughter contained an element (death of the victim), which was not a statutory element of DUI. However, in *Grady*, it was held that double jeopardy precluded conviction of both offenses, because the prosecution was required to prove the conduct constituting DUI in order to prove the element of recklessness necessary to convict the de-

fendant of reckless manslaughter. This "same conduct" test redefined the concept of a lesser included offense for double jeopardy purposes and thereby expanded the *Blockburger* "same elements" test.

Less than eight months after *Grady v. Corbin* was decided, we rendered our opinions in *Walden v. Commonwealth*, Ky., 805 S.W.2d 102 (1991) and *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990).

The facts in *Walden, supra,* were almost identical to those in *Grady*, except that the DUI and vehicular homicide (wanton murder) charges were brought in the same indictment instead of in separate proceedings. We adopted the "same conduct" test enunciated in *Grady v. Corbin* and held that the defendant could not be convicted of both offenses if the prosecution intended to use the DUI offense as the element of wantonness necessary to prove the homicide offense. Identical results were subsequently reached in *Hall v. Commonwealth*, Ky.App., 819 S.W.2d 39 (1991), a DUI/reckless homicide conviction, and *Bush v. Commonwealth*, Ky., 839 S.W.2d 550 (1992), a DUI/wanton murder conviction. Of course, the "same conduct" test described in *Grady v. Corbin* and *Walden v. Commonwealth* has no application here, since it is not contended that the conduct upon which the contempt adjudications were predicated is being offered to prove an *element* of one or all of the felony offenses which are the subject of these appeals. Rather it is contended that the conduct constituting the contempt is the same conduct necessary to prove the applicable felony offense, *i.e.*, they arose from a "single impulse."

In *Ingram v. Commonwealth, supra*, the defendant was convicted of two class D felonies, selling marijuana to a minor, KRS 218A.990(5) (repealed, Acts 1992, ch. 441, § 30), and selling marijuana within 1,000 yards of a school, KRS 218A.990(16) (repealed, Acts 1992, ch. 441, § 30). Both convictions arose out of a single transaction of selling two marijuana cigarettes to a minor within 1,000 yards of a school. Although we cited the *Grady v. Corbin* prohibition against multiple punishments for the "same conduct," our opinion in *Ingram* was premised on the

theory that a defendant could not be convicted of multiple offenses arising out of a "single impulse." Essentially, this is but an extension of the "same conduct" test from a prohibition against use of the conduct constituting one offense to prove an essential element of another offense to a prohibition against the use of one incident of conduct to prove multiple offenses.

The only case decided subsequent to *Ingram* in which a conviction was reversed solely by application of the "single impulse" test is *Hellard v. Commonwealth*, Ky.App., 829 S.W.2d 427 (1992), in which the Court of Appeals held that *Ingram* precluded convictions of both theft and forgery where the defendant signed a false name on a rental agreement for a videocassette recorder. We also cited *Ingram* in *Cooley v. Commonwealth*, Ky., 821 S.W.2d 90 (1991), but relied primarily on our statutory interpretation that the legislature did not intend for KRS 514.110, which proscribes receiving stolen property, to permit multiple convictions for receiving, retaining and disposing of the same item of property. In *Stark v. Commonwealth*, Ky., 828 S.W.2d 603 (1991), *overruled on other grounds, Thomas v. Commonwealth*, Ky., 931 S.W.2d 446 (1996), we held that *Ingram* precluded two convictions of robbery of a store clerk where the defendant stole money belonging to both the clerk and his employer during the course of the robbery. The same result could have been reached simply by noting that since robbery is a crime against the person, there was only one victim, thus only one crime. Finally, in *Commonwealth v. Grubb*, Ky., 862 S.W.2d 883 (1993), we cited *Ingram* in holding that a defendant could not be convicted of selling multiple items of different controlled substances of the same schedule. The same result could have been reached by application of the *Blockburger* "same elements" test, since the sales all violated the same statute. *Compare Jackson v. Commonwealth*, Ky., 670 S.W.2d 828 (1984), which held that theft of multiple items from the same victim is but one theft.

Support for the "single impulse" test was found not so much in *Grady v. Corbin* as in our own precedents. First, we cited *Hamil-*

*ton v. Commonwealth*, Ky., 659 S.W.2d 201 (1983), in which we held that a defendant could not be convicted of both rape and incest arising out of one act with his ten year old daughter. An identical result was reached in *Denny v. Commonwealth*, Ky., 670 S.W.2d 847 (1984). Neither of these cases would have required reversal under *Blockburger* analysis, since the age of the victim is an element of statutory rape, but not incest, and the relationship of the victim to the defendant is an element of incest, but not rape. However, *Ingram* relied primarily on *Jones v. Commonwealth*, Ky., 756 S.W.2d 462 (1988), wherein we held that "[t]he Commonwealth is permitted to carve out of a single criminal episode the most serious offense, but not to punish a single episode as multiple offenses." *Id.* at 463. Interestingly, *Jones* purported to find support for this proposition in *Blockburger*, itself, by quoting the following from 284 U.S. at 302, 52 S.Ct. at 181:

> The distinction stated by Mr. Wharton is that 'when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all united in swelling a common stream of action, separate indictments lie.' *Wharton's Criminal Law*, 11th ed., § 34....

*Jones, supra*, at 463. However, the quote is out of context. The remainder of the quote is as follows:

> ... Or, as stated in note 3 to that section, 'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately.... If the latter, there can be but one penalty.'

*Id.* The passage in its entirety is the second and less used prong of the *Blockburger* test and the source for KRS 505.020(1)(c), which defines when a course of conduct constitutes but one offense. *See Jordan v. Commonwealth*, Ky., 703 S.W.2d 870 (1985). Thus, *Jones*, which was the primary underpinning of the "single impulse" test announced in *Ingram* was fundamentally flawed insofar as it sought support for that concept in the *Blockburger* case. Any constitutional foundation for the "single impulse" test an-

nounced in *Ingram* therefore must be traced by analogy to the "same conduct" test announced in *Grady v. Corbin.*

In *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the United States Supreme Court specifically overruled *Grady v. Corbin.* The Court in *Dixon* stated as follows:

> Unlike *Blockburger* analysis, whose definition of what prevents two crimes from being the "same offence," U.S. Const., Amdt. 5, has deep historical roots and has been accepted in numerous precedents of this Court, *Grady* lacks constitutional roots. The "same-conduct" rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy. *See, e.g., Gavieres v. United States,* 220 U.S., [338] at 345, 31 S.Ct., [421] at 416 [423, 55 L.Ed. 489 (1911)] (in subsequent prosecution, "[w]hile it is true that the conduct of the accused was one and the same, two offenses resulted, each of which had an element not embraced in the other").

*Id.,* 509 U.S. at 704, 113 S.Ct. at 2860, 125 L.Ed.2d at 573.

As the United States Supreme Court noted in *Dixon,* application of the "same conduct" analysis beyond *Blockburger* has created confusion and is "unstable in application." *Dixon,* 509 U.S. at 709, 113 S.Ct. at 2863, 125 L.Ed.2d at 576. *Dixon* notes a compelling example of this "confusion" by citing *United States v. Felix,* 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), wherein the Court was "forced to recognize a large exception to" the *Grady* "same conduct" test. *Dixon,* 509 U.S. at 709, 113 S.Ct. at 2863, 125 L.Ed.2d at 576. The Court in *Felix* held that a subsequent prosecution for conspiracy was not barred by a previous conviction for attempt. We agree with the United States Supreme Court's conclusion that the need to recognize such a "large and longstanding exception to the *Grady* rule [gives] cause for concern that the rule [is] not an accurate expression of the law." *Id.* Recently, we recognized, without overruling, the problems inherent in the "same conduct" analysis.

*Baker v. Commonwealth,* Ky., 922 S.W.2d 371 (1996).

■ While this Court "is not unmindful of the admonition of the doctrine of *stare decisis,*" we recognize that "this rule is not inflexible." *D & W Auto Supply v. Department of Revenue,* Ky., 602 S.W.2d 420, 423 (1980). Adopting the reasoning cited by the Court in *Dixon,* we now depart from the "same conduct" test adopted in *Walden v. Commonwealth, supra,* and the "single impulse" test enunciated in *Ingram v. Commonwealth, supra,* and declare that double jeopardy issues arising out of multiple prosecutions henceforth will be analyzed in accordance with the principles set forth in *Blockburger v. United States, supra,* and KRS 505.020. Specifically, we overrule *Walden v. Commonwealth* and *Hall v. Commonwealth, supra,* which were predicated on the "same conduct" test; and *Jones v. Commonwealth, Ingram v. Commonwealth,* and *Hellard v. Commonwealth,* all *supra,* which were predicated on the "single impulse" test; and *Hamilton v. Commonwealth* and *Denny v. Commonwealth, supra,* which were decided contrary to *Blockburger* and KRS 505.020.

Thus, we return to the *Blockburger* analysis. We are to determine whether the act or transaction complained of constitutes a violation of two distinct statutes and, if it does, if each statute requires proof of a fact the other does not. *Eldred v. Commonwealth,* Ky., 906 S.W.2d 694 (1995). Put differently, is one offense included within another? *Id.*

### DISCUSSION

■ The question, then, is whether criminal contempt can act as a bar to prosecution on double jeopardy grounds?

The issue has been addressed in several other states, as well as by the federal courts. *See, e.g., United States v. Winter,* 70 F.3d 655 (1st Cir.1995); *State v. Kipi,* 72 Haw. 164, 811 P.2d 815 (1991); *State v. Magazine,* 302 S.C. 55, 393 S.E.2d 385 (1990); *Oregon v. McIntyre,* 94 Or.App. 240, 764 P.2d 972 (1988). Indeed, the opinion of the United States Supreme Court upon which we have so heavily relied previously in this opinion addressed this very issue. In *United States*

*v. Dixon, supra,* the question formulated by the Court was: "In both of these cases, respondents were tried for criminal contempt of court for violating court orders that prohibited them from engaging in conduct that was later the subject of a criminal prosecution. We consider whether the subsequent criminal prosecutions are barred by the Double Jeopardy Clause." *Id.* at 691, 113 S.Ct. at 2853, 125 L.Ed.2d at 564.

> It is well established that criminal contempt, at least the sort enforced through nonsummary proceedings, is "a crime in the ordinary sense."
>
> We have held that constitutional protections for criminal defendants other than the double jeopardy provision apply in nonsummary criminal contempt prosecutions just as they do in other criminal prosecutions. We think it obvious, and today hold, that the protection of the Double Jeopardy Clause likewise attaches.

*Id.* at 696, 113 S.Ct. at 2856, 125 L.Ed.2d at 567–568 (citations omitted).

Just as the United States Supreme Court found it obvious, we have no hesitation in declaring that the protections of § 13 of the Kentucky Constitution attach in non-summary criminal contempt proceedings just as they do in other criminal prosecutions.

▇▇▇ Having found that non-summary, criminal contempt is a crime for double jeopardy purposes, we must now determine whether further prosecution is barred in these three cases. We hold that it is not. In order to obtain a contempt conviction, it must be proven that the defendant had knowledge that a valid court order prohibiting the conduct was in effect. *United States v. Dixon, supra,* 509 U.S. at 701, 113 S.Ct. at 2858–59, 125 L.Ed.2d at 571, 17 C.J.S. *Contempt* § 18. Thus, each contempt conviction required proof of an element which the felony charges did not.

▇▇▇ Roger Burge's conviction for burglary in the first degree required the Commonwealth to prove that Burge entered the home with an intent to commit a crime while carrying a deadly weapon. KRS 511.020. Thus, his burglary conviction required proof of ele-

ments unnecessary to convict him of contempt.

▇▇▇ The charge against Gary Herriford of assault in the second degree would have required the Commonwealth to prove that he intentionally caused physical injury to his wife by means of a dangerous instrument. KRS 508.020. The charge against Kenny Effinger of assault in the first degree would have required the Commonwealth to prove that he intentionally caused serious physical injury to Tonya Madry "by means of a deadly weapon or a dangerous instrument." KRS 508.010. The assault charges thus required proof of elements unnecessary to convict Herriford and Effinger of contempt.

▇▇▇ Further, the charge against Effinger of retaliating against a witness would have required proof that he attacked Tonya Madry because she had testified against him or reported him to law enforcement officials, KRS 524.055, an element not required to convict him of contempt. It is clear that "there are distinct elements in each of the offenses not required for the other, which precludes a finding of double jeopardy" under the *Blockburger* test. *Eldred v. Commonwealth,* Ky., 906 S.W.2d 694, 707 (1995).

### CONCLUSION

For the reasons set forth above, we hereby reverse the decision of the Court of Appeals in 92–SC–287–DG, affirm the Jefferson Circuit Court in 92–SC–873–TG, and reverse the Jefferson Circuit Court in 92–SC–896–TG.

STEPHENS, C.J., and BAKER, GRAVES, LAMBERT and WINTERSHEIMER, JJ., concurred with the original opinion.

STUMBO, J., dissented by separate opinion.

KING, J., not sitting.

STEPHENS, C.J., and COOPER, GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur with modified opinion.

LAMBERT, J., concurs by separate opinion.

STUMBO, J., dissents by separate modified opinion.

LAMBERT, Justice, concurring.

I concur with most of what Justice Stumbo has said in her dissenting opinion. In particular, I concur with her view that the majority opinion herein is insufficiently deferential to *stare decisis* and far too ready to overrule settled precedent.

In my view, existing law prior to the majority opinion was not incompatible with a determination that no double jeopardy bar exists in these cases. I concurred with the original majority opinion and my view of the result has not changed. What has changed is the substance of the majority opinion with the introduction of an inflexibility into our law which will produce inappropriate multiple charges and multiple punishments. Our decisions in *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990), and *Walden v. Commonwealth*, Ky., 805 S.W.2d 102 (1991), amounted to a Kentucky gloss, by means of Section 13 of our Constitution, upon the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. We were entirely within our rights to so interpret the Constitution of Kentucky (*Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975)), and inasmuch as it has been so interpreted, should be, for a time, let alone.

The majority opinion does not reveal some heretofore unrecognized theory of double jeopardy analysis nor does it identify any untoward results arising out of the current state of the law. We should remember that judges, lawyers and the people of Kentucky must live with the decisions we make and refrain from changing the law for less than compelling reasons.

For the reasons stated herein, I concur only in result.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. By way of petition for rehearing, without hearing oral argument, we have substantially broadened our original opinion and overruled a number of cases not even referred to initially. Over the course of seven years this Court has rendered a multitude of opinions purporting to be the definitive ruling on double jeopardy, only to backtrack or complicate further the test in the next case.

In my view, we should not stray from the holding of *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990). Therein we recognized a view of double jeopardy broader than that articulated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), or in KRS 505.020. In the course of the *Ingram* opinion, we acknowledged that the statute constituted a collateral estoppel element of the double jeopardy principle, barring a state prosecution on a single act after a jury had acquitted a defendant of federal charges deriving from the same act. *Id.* at 324. We found in *Ingram* but "a single impulse and a single act, having no compound consequences"; thus, the dual conviction was constitutionally inappropriate. *Id.* As recently as *Baker v. Commonwealth*, Ky., 922 S.W.2d 371 (1996), we noted that in *Ingram* "[w]e held that Section 13 of the Constitution of Kentucky mandated double jeopardy protection which went beyond the so-called 'federal floor.' As such, our [decision] in *Ingram* ... [has] now been engrafted upon the Constitution of Kentucky and while such does not provide insulation from modification or overruling, principles of *stare decisis* counsel caution." *Id.* at 375 (citation omitted).

Caution has now been thrown to the winds. The opinion issued today returns to a strict analysis of the statutory elements of each offense and whether each requires proof of an additional fact which the other does not. No attention is to be paid to the question of whether compound consequences result from the criminal act. As stated in *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694, 706 (1995), once it has been determined that one offense charged is not included within the other, the court must then inquire whether "the offense(s) arose from a single act or impulse with no compound consequences, even though '[b]y virtue of additional, circumstantial facts, the behavior was offensive to two criminal statutes.'" In *Eldred*, the

compound consequences found by the court were the death of the victim and the destruction of the vehicle, both of which were achieved by the act of setting the automobile on fire. *Id.* at 707.

As applied to the instant cases, the compound consequences prong of the *Ingram* test would prohibit the criminal prosecutions involved. In each case the defendant was prohibited by a restraining order of some type from coming about the home of or injuring the victims involved. The additional facts described in each of the cases by the majority are just the type of "additional, circumstantial facts" that we meant to address in *Ingram.* Each defendant was or will be twice punished for precisely the same behavior.

Nowhere in the majority opinion does the Court explain why it finds it necessary to take from our citizens the additional protection from double jeopardy that this Court deemed appropriate to recognize just seven years ago. In so abruptly retracting this protection, we do these defendants an injustice and the jurisprudence of this state an injury through our apparent willingness to overrule precedent so recently established. I respectfully dissent.