RENDERED: AUGUST 29, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0235-MR

STEPHEN GALVIN                                                    APPELLANT

v.                 APPEAL FROM GREENUP CIRCUIT COURT
                   HONORABLE BRIAN C. McCLOUD, JUDGE
                   ACTION NO. 23-CI-00342

FIRST & PEOPLE'S BANK AND
TRUST COMPANY; AMERICAN
FIDUCIARY SERVICES, LLC;
GEORGIA'S OWN CREDIT UNION;
AND MICHAEL HILL                                                 APPELLEES

OPINION
REVERSING

** ** ** ** **

BEFORE: LAMBERT, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Stephen Galvin, President and Chief Executive Officer of

U.S. Credit, Inc. (USCI), appeals from orders entered on January 25, 2024, and

February 8, 2024, by the Greenup Circuit Court finding him in contempt for failure

to appear at a show cause hearing. As a sanction, the circuit court ordered Galvin

to pay attorney fees and costs to the other parties to the action, including an appointed receiver, within five days of the court's order, and an additional $50,000 per day sanction for each day thereafter that he failed to pay the fees awarded. In total, Galvin was ordered to pay $457,001.84, plus the additional daily sanction.[1] For the reasons stated herein, we reverse the circuit court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2020, First & People's Bank and Trust Company (the Bank), located in Russell, Kentucky, entered into a contract with USCI. USCI is a Florida-incorporated entity with physical locations in both Florida and Massachusetts. The agreement of the parties amounted to a market lending platform whereby USCI agreed to manage, facilitate, and service loan programs for loans that were funded by the Bank. The Bank agreed to fund approximately $5,000,000 per week in loans. A third party, Georgia's Own Credit Union (Credit Union), agreed to purchase loans funded by the Bank for two of the loan programs. The Bank contends that, in 2022, it stopped receiving payments from USCI and loans that were supposed to be sold were staying on the Bank's books, contrary to the contract. The record before us contains numerous email communications between officials from the Bank and Galvin that demonstrate the Bank was trying

---

[1] As of the date of this Opinion, the total sanctions that Stephen Galvin has been ordered to pay exceeds $27,000,000.

to ascertain the location of the funds owed by USCI. As noted, Galvin is the President and CEO of USCI. Dissatisfied with the information provided by Galvin, in August 2023, the Bank filed the underlying lawsuit against USCI to collect the funds allegedly owed. Galvin was not named a party to this action. The Bank filed a concurrent motion for a temporary restraining order to prevent further dissipation of funds, which was granted by the circuit court after an *ex parte* hearing.

Based on the record before this Court, the Bank and USCI were attempting to negotiate a settlement in the early stages of the litigation. However, on December 7, 2023, the Bank filed a motion to appoint a receiver.[2] The motion was initially heard by the circuit court on December 14, 2023.[3] At the hearing, the Bank insisted that USCI had not provided sufficient documentation to show USCI was in possession of the funds owed. For example, a spreadsheet generated and provided by Galvin allegedly showed that USCI was still taking in money for the loans, but not distributing it to the Bank. The court ordered that USCI had 24 hours to produce a bank account or escrow statement that proved they possessed the funds owed to the Bank. If USCI failed to produce the information, the court

---

[2] The First & People's Bank and Trust Company (the Bank) also filed an amended complaint which joined Georgia's Own Credit Union as a defendant on December 7, 2023.

[3] The Bank had also filed a motion for default judgment and for sanctions against U.S. Credit, Inc. (USCI) for violation of the temporary restraining order.

ordered that it would conduct a full evidentiary hearing on the Bank's motion to appoint a receiver. USCI failed to produce the information.

The circuit court conducted an evidentiary hearing for the appointment of a receiver on December 18, 2023. Robert Sorrell, Vice President of the Bank, testified that USCI owed the Bank $10,000,000 - $12,000,000 at the end of 2022, and that USCI had repeatedly refused to provide an accounting of the funds. The evidence introduced at the hearing indicated that Galvin was the primary point of contact between the Bank and USCI. Christin Hewitt, the Chief Financial Officer for the Credit Union, testified that USCI owed her organization approximately $5,300,000 and the amount was growing monthly. The proposed receiver, Geoffrey Winkler, from Portland Oregon, also testified as to his qualifications. USCI put on no proof at the hearing. While local counsel was present for USCI at the receivership hearing, neither Galvin nor any other representative for USCI was present. On December 19, 2023, the court entered an order appointing Winkler and his company, American Fiduciary Services, LLC, as receiver. USCI immediately filed an appeal of the December 19 order in this Court on December 21, 2023. *See U.S. Credit, Inc. v. First & People's Bank and Trust Company*, No. 2023-CA-1499-MR.[4] However, not only did USCI file an appeal, on December 26, 2023, USCI filed a separate action in Massachusetts in an attempt

---

[4] This appeal is currently being held in abeyance pending USCI bankruptcy proceedings.

to persuade a Massachusetts state court to enjoin the Kentucky receivership order. The complaint filed in Massachusetts was verified by Galvin.[5]

On December 29, 2023, the Bank and the Credit Union filed a joint motion for USCI to show cause why it should not be held in contempt for refusing to comply with the receivership order and for "subverting" the circuit court's order appointing the receiver.[6] The gist of this motion looked to the lawsuit filed by USCI against the Bank in Massachusetts on December 26, 2023. The motion was not served on Galvin individually. USCI and the Bank filed briefs and a hearing was held on January 4, 2024, to set a show cause hearing.

During the January 4, 2024, hearing, counsel for the Bank, Robert E. Maclin, III, announced they were present to schedule a "show cause hearing why U.S. Credit should not be held in contempt." Video Record (VR), January 4, 2024, 1:21:29. Galvin was not present at the January 4 hearing but counsel for USCI was in attendance. Counsel for the Credit Union also participated at the hearing.

---

[5] The current status of the Massachusetts case is unclear. The record before us indicates it was removed to federal court, but whether the case is still pending is unknown.

[6] The motion was styled, "Plaintiff, First & People's Bank and Trust Company's and Defendant, Georgia's Own Credit Union's Motion for Defendant, U.S. Credit, Inc. to Show Cause Why it Should Not be Held in Contempt of This Court for Attempting to Subvert the Receivership Order of This Court Entered on December 19, 2023 by Filing an Action in the Commonwealth of Massachusetts Seeking to Declare the Court's Receivership Order Void and Injunctive Relief." Record at 447. The caption of the motion makes no reference to Stephen Galvin, although the text includes his name as Chief Executive Officer, requesting that he should also appear to show cause why he should not be held in contempt.

During this eleven-minute hearing, no direct reference was made to Galvin, although it was discussed that the CEO, as the corporate representative of USCI, could appear at the hearing by Zoom. The judge expressly stated near the end of the January 4 hearing that the primary issue before the court at the contempt hearing would be "the contempt of U.S. Credit." VR, January 4, 2024, 1:30:25. Again, no reference was made to Galvin regarding any alleged contempt as concerned the receivership order entered by the court. The court set the show cause hearing for January 12, 2024.

On January 5, 2024, attorney Maclin, on behalf of the Bank, tendered an order to the court setting the January 12, 2024, show cause hearing. However, the proposed order not only included the alleged contempt by USCI, but also included alleged contempt by Galvin, which was not discussed or addressed by the court at the January 4, 2024, hearing. Notwithstanding that the order did not accurately reflect the proceedings in court on January 4, the court signed and entered the order on January 8, 2024. Once again, Galvin was not personally served a copy of the show cause order by the circuit clerk, scheduling the show cause hearing on January 12, 2024. *See* Kentucky Rules of Civil Procedure (CR) 77.04.

At the show cause hearing on January 12, 2024, no representative for USCI appeared, including Galvin or counsel for USCI. At the outset of the

hearing, counsel for the Bank pointed out that USCI had filed a bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts approximately 20 minutes prior to the hearing.[7] Counsel for the Bank then argued that Galvin could still personally be held in contempt despite USCI's bankruptcy filing, but asked for additional time to research the matter and a continuation of the hearing. The circuit court continued the show cause hearing for Galvin to January 17, 2024. No order was entered scheduling the January 17, 2024, hearing nor was Galvin given notice by the court of this hearing.[8] On January 16, 2024, the Bank and Credit Union filed a joint supplement to the show cause motion, directed totally at Galvin. Again, Galvin was not personally served a copy of the supplement to the motion.

---

[7] USCI filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Massachusetts, Case No. 24-10058. Pursuant to 11 United States Code (U.S.C.) § 362(a)(1), the litigation in this case against USCI was automatically stayed, until such time as ordered by the Bankruptcy Court or by operation of law. This Court takes judicial notice of the bankruptcy petition and schedules, and all pleadings filed in the United States Bankruptcy Court for the District of Massachusetts. *See Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 265 (Ky. App. 2005). This Court specifically takes notice that Galvin did not seek relief from the bankruptcy court pursuant to 11 U.S.C. § 105 during these proceedings. The Court further notes that neither the Bank nor Credit Union filed a motion in the bankruptcy court to terminate the automatic stay pursuant to 11 U.S.C. § 362(d). The Bank, Credit Union, and Receiver have filed proof of claims in the bankruptcy proceeding that presumably include the monetary sanctions awarded in the February 8, 2024, order of the circuit court. Finally, the Court notes that the bankruptcy court confirmed a Plan of Liquidation for USCI by order entered February 4, 2025 (Document No. 842).

[8] Apparently, only those who were present at the January 12, 2024, hearing had knowledge of its continuance to January 17, 2024. There was no notice or order entered by the court or the clerk regarding the continuance of the show cause hearing to January 17, 2024.

On January 17, 2024, neither Galvin nor counsel was present at the hearing. Counsel for the Bank and Credit Union argued that the circuit court did not lose its authority to hold Galvin in contempt despite USCI's pending appeal of the receivership order and subsequent bankruptcy filing. Moreover, they argued that the bankruptcy stay applied only to USCI, not Galvin. The circuit court agreed and found that Galvin was in contempt for failure to appear. The hearing lasted approximately 14 minutes and there was no evidence presented by the Bank or the Credit Union regarding any alleged contemptuous conduct by Galvin, as concerned the receivership order. Presumably, the sanctions were assessed for Galvin's failure to appear at the January 17, 2024, hearing.

Subsequently, by order entered January 25, 2024, the court ordered Galvin to pay attorney fees for all parties and the receiver from the date of entry of the receivership order on December 19, 2023, through January 17, 2024. Like all previous orders and motions filed in this litigation, relevant to this appeal, Galvin was not personally served a copy of the order. The order was prepared and jointly tendered by counsel for the Bank and Credit Union and specifically states that the purpose of the show cause order hearing concerned Galvin's "breaching and subverting the Order Appointing Receiver entered by this Court on December 19, 2023[.]" Record at 851. Notwithstanding, not one shred of evidence was introduced on this issue at the show cause hearing as no witness testified nor was

-8-

any evidence presented. The order further gratuitously states that the Bank and Credit Union had "previously established a prima facie case of U.S. Credit and Galvin being in Contempt," although this too was not addressed by argument or evidence at the January 17, 2024, hearing. Record at 851.[9]

The court further set out findings and conclusions that Galvin had breached and subverted the receivership order, while again, no evidence supporting the same was presented at the January 17, 2024, hearing. Incredibly, the order further declares that "Galvin was aware of the Court's orders" although he was not personally served with any motions or orders regarding his alleged contempt, including the hearing conducted on January 17, 2024. Record at 853.

As noted, the January 25, 2024, order also provided that for each day Galvin did not pay the fees as ordered, he was to pay an additional $50,000 sanction per day. Galvin entered a limited appearance and filed an objection to the order tendered by the Bank on January 22, 2024, but the objection was not addressed by the court. On February 8, 2024, after the parties filed proof of attorney fees, the circuit court entered another order with specific distributions to each party's attorneys. As previously stated, the total amount Galvin was ordered

_____

[9] At the hearing on January 4, 2024, the court stated on the record that based on the evidence presented at the receiver hearing on December 18, 2023, the court believed that USCI had engaged in "gross misconduct or fraud." Video Record, January 4, 2024, 1:27:40. The court made no reference to Galvin and any alleged contemptuous acts that purportedly occurred after entry of the December 19, 2023, order. No evidence of contemptuous conduct by Galvin was presented at the hearings on January 4, January 12, or January 17, 2024.

to pay as a sanction for contempt was $457,001.84, plus $50,000 per day thereafter if the sanctions were not paid within five days. This order also was not served on Galvin. This appeal followed.

## STANDARD OF REVIEW

In *Crandell v. Cabinet for Health and Family Services ex rel. Dilke*, 642 S.W.3d 686, 689 (Ky. 2022), the Kentucky Supreme Court recently restated our standard of review of contempt orders on appeal:

> "A trial court . . . has broad authority to enforce its orders, and contempt proceedings are part of that authority." *Commonwealth, Cabinet for Health & Fam. Servs. v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011) (citing *Lewis* [*v. Lewis*, 875 S.W.2d 862, 864 (Ky. 1993)]). We review contempt orders "for abuse of discretion, but we apply the clear error standard to the underlying findings of fact." *Id.* (citations omitted).

However, based on the disputed facts of this case, our review is not simply limited to the abuse of discretion standard. As will be discussed, the contempt order, on its face, clearly appears to be aimed at punishing Galvin, which constitutes criminal contempt. Our review is thus commensurate with that of criminal appeals based upon the seriousness of the penalties imposed. *Cabinet for Health & Family Servs. v. J.M.G.*, 475 S.W.3d 600, 624 (Ky. 2015). We view the sanctions imposed in this case to be serious.

Additionally, since the circuit court rendered the contempt sanctions by summary proceedings, rather than by an evidentiary hearing, we have

-10-

conducted a *de novo* review of the entire record in this case. *See Seiller Watterman, LLC v. Bardstown Cap. Corp.*, 643 S.W.3d 68, 74 (Ky. 2022), *abrogated in part on other grounds by Bluegrass Trust for Historical Pres. v. Lexington Fayette Urban Cnty. Gov't Planning Comm'n*, 701 S.W.3d 196, 207-08 (Ky. 2024).

## ANALYSIS

This case is an appeal of a contempt order. Our Supreme Court has defined contempt as "the willful disobedience toward, or open disrespect for, the rules or orders of a court." *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1997). Generally, contempt may be either civil or criminal:

> Generally, sanctions imposed to benefit an adverse party-coercive sanctions, for example, or compensatory ones—are deemed civil and are sought and imposed through civil proceedings between the original parties, very often as part of the underlying cause. . . .
>
> Punitive sanctions, however—unconditional sanctions not subject to purgation through compliance with an order and imposed principally if not purely to vindicate the authority of the court—are deemed criminal. . . .

*J.M.G.*, 475 S.W.3d at 611. Thus, civil contempt is of two general varieties – (1) remedial (compensatory) civil contempt, which compensates a party for loss suffered as a result of the contemptuous conduct, and (2) coercive civil contempt, which forces a party to comply with a court order. *Id.* And, criminal contempt

-11-

may be either direct or indirect.  Direct criminal conduct is generally defined as conduct committed in the presence of the court, and indirect criminal contempt is conduct committed outside the presence of court.  *Burge*, 947 S.W.2d at 808.  It has been observed that the "defining characteristic of civil contempt is the fact that contemnors" are said to "carry 'the keys of their prison in their own pockets[.]'" *Campbell v. Schroering*, 763 S.W.2d 145, 148 (Ky. App. 1988) (quoting *Shillitani v. United States*, 384 U.S. 364, 368 (1966)); *see also Kentucky Handbook Series – Trial Handbook for Kentucky Lawyers* § 12:2 (2017 – 2018 ed.).  Conversely, in criminal contempt, its central objective is punitive, that is to punish.  *Campbell*, 763 S.W.2d at 147.

This case began as a civil contempt proceeding against USCI on December 29, 2023, regarding USCI's alleged violation of the receivership order entered on December 19, 2023.  However, upon USCI filing bankruptcy on January 12, 2024, the case morphed into a criminal contempt proceeding against Stephen Galvin, individually.  Presumably, Galvin is being punished for USCI filing an action in Massachusetts in December of 2023 to challenge the Kentucky receivership order, USCI filing bankruptcy on January 12, 2024, and Galvin not appearing at the hearing on January 17, 2024.  Since there was no evidence presented at any hearing regarding any contemptuous act by Galvin as concerns the receiver, any sanction for contempt cannot be condoned by this Court.  As the

-12-

Supreme Court held in *J.M.G.*, 475 S.W.3d at 624-25, criminal contempt proceedings must be consistent with those required under the federal constitution for criminal trials including the presentation of sufficient evidence to justify the contempt order, which did not occur in this case. Similarly, this Court had held that in order to conduct meaningful appellate review, the circuit court's contempt order must be supported by sufficient evidence. *Buddenberg v. Buddenberg*, 304 S.W.3d 717, 722 (Ky. App. 2010). Given this case evolved into one of criminal contempt against Galvin, it was necessary for evidence to be presented that Galvin willfully disobeyed the court's receivership order and be proven beyond a reasonable doubt. *Id.*

However, after the filing of the joint motion for contempt on December 29, 2023, by the Bank and Credit Union, no evidence was presented at the hearings on January 4, January 12, or January 17, 2024. The gist of the contempt motion looked to alleged contemptuous acts by USCI or Galvin in subverting and breaching the court's December 19, 2023, order appointing the receiver. These issues were not even addressed at the final hearing on January 17, 2024. The court simply announced that Galvin was in contempt for failure to appear. VR, January 17, 2024, 9:53:34-9:55. The court also declined to issue an arrest warrant that was requested by the Bank. VR, January 17, 2024, 9:55:15. Interestingly, this was not addressed in the court's January 25, 2025, order. And,

-13-

for the first time in the January 25, 2024, order, which was tendered to the court by counsel for the Bank and Credit Union after the January 17, 2024, hearing, reference is made to Galvin in his "individual capacity" as concerns his being held in contempt. Record at 853. We cannot over emphasize that there is absolutely no evidence in the record as concerns any actions taken by Galvin in any capacity that can be construed as defying the December 19 receivership order. This included the filing of the action in state court in Massachusetts on December 26, 2023. Without any evidence being presented on how Galvin interfered with the receivership during the period of December 19, 2023, through December 29, 2023, there can be no legal basis for finding him in contempt and assessing the substantial punishment sanction as levied by the circuit court in this case. On its face, the sanction is unconscionable and constitutes a manifest injustice to Galvin. *See* CR 61.02.

That is not to say that Galvin is a knight in shining armor in this case. Without a proper evidentiary record, we have no way of determining whether Galvin, in his capacity as a corporate officer or individually, in some way interfered with the receiver in the performance of his duties during the period of December 19, 2023, through December 29, 2023, assuming Galvin's alleged contemptuous conduct was properly before the court. As noted, based on the circuit court's directives at the January 4, hearing, the only contemptuous conduct scheduled before the court at the January 12, hearing was USCI as a corporate

-14-

entity, not Galvin.[10]  Yet, the January 12, hearing was continued to January 17, to focus solely on punishing Galvin.

This Court has previously discussed an officer's liability when acting on behalf of a corporation in *Young v. Vista Homes, Inc.*, 243 S.W.3d 352 (Ky. App. 2007) as follows:

> Generally, an agent is not liable for his own authorized acts, or for the subsequent dealings between the third person and the principal after the principal is disclosed. *Potter v. Chaney*, 290 S.W.2d 44, 46 (Ky. 1956). Likewise, an officer, director, or shareholder, when acting as an agent of the corporation, is also protected from personal liability when acting within his authority to bind the principal.  *Smith v. Isaacs*, 777 S.W.2d 912, 913 (Ky. 1989), citing *Restatement (Second) of Agency* § 328 (1958).  While an agent or corporate officer is normally not liable for the debts or contractual obligations of the principal, an agent or corporate officer is not immune from liability for his own intentional misconduct or for negligence based upon a breach of his own duty.

*Id.* at 363 (citing *Isaacs*, 777 S.W.2d at 913) (citations omitted).

---

[10] As discussed, counsel for the Bank tendered an order following the January 4, 2024, hearing that did not comport with the court's directives at the hearing.  The Bank unilaterally addressed the alleged contempt by Galvin in the order, which the court inexplicably signed.  Effectively, by signing the order, the court improperly delegated its decision-making responsibility on the contempt issue to the Bank's counsel, given that neither the Bank nor the court deliberated the contempt of Galvin as an issue at the January 4 hearing. *See Bingham v. Bingham*, 628 S.W.2d 628, 629-30 (Ky. 1982).  The same can be said for the January 25, 2024, order that was jointly tendered by counsel for the Bank and Credit Union after the January 17 hearing, that again, did not comport with the proceedings.  This case is a primer for all district, circuit, and family court judges in Kentucky who direct attorneys to prepare orders following hearings.  To avoid abdicating their decision-making responsibility, the judge must review the proposed order before signing to ensure the order comports to the proceedings and directives of the court.

-15-

Had Galvin been properly noticed and before the court for contempt at the January 17 hearing, the focus of the court's inquiry should have been on what actions, if any, were taken by Galvin in his corporate or individually capacity, that breached or subverted the court's order entered on December 19, 2023. The court heard no testimony or received no evidence during any hearing on this issue and thus any finding regarding the same to hold Galvin in contempt was both an abuse of discretion and clearly erroneous. Without evidence in the record that Galvin personally and willfully defied the court's order, contempt was not warranted in this case. *Buddenberg*, 304 S.W.3d at 722. *See also* 17 C.J.S. *Contempt* § 51 (2025).

Clearly, the circuit court's focus on the pertinent issues was diverted upon USCI's Chapter 11 bankruptcy filing on the morning of January 12, 2024. This Court is most cognizant that bankruptcy can be extremely frustrating to creditors, their attorneys, and state courts alike. However, it is federal law whose genesis is the United States Constitution, whereupon the Supremacy Clause of Article VI of the Constitution is controlling. Therein, judges in every state are bound thereby.

Upon the filing of bankruptcy, the emphasis of the circuit court shifted to punishing Galvin, at the insistence of the Bank and Credit Union. Galvin was not a party to the litigation and based on the limited record before this Court, it

appears any actions he took between December 19 and December 29, 2023, were in his corporate capacity as president of USCI. Upon the filing of the bankruptcy, both the receivership and the December 19, 2023, order were effectively superseded by applicable bankruptcy law, which had the effect of terminating the receivership. While we have elected not to address whether the provisions of 11 United States Code § 362(a)(1) were violated by the continuation of contempt proceedings against Galvin, as argued on appeal, we have grave doubt that the bankruptcy court would have condoned these proceedings against Galvin for his purported conduct from December 19, 2023, through December 29, 2023. However, none of the parties sought relief from the bankruptcy court and thus we will defer to the bankruptcy court on whether a violation of the stay occurred in this case, as it is not relevant to our reversal of the contempt sanctions against Galvin.

Finally, and equally disturbing, is the court's failure to serve notice on Galvin of the contempt proceedings against him, individually. As noted previously, Galvin was not a party. He did not appear in Kentucky during any of the proceedings in this case from its inception in August of 2023. He was not present at the receivership hearing on December 18, 2023. The joint contempt motion filed by the Bank and Credit Union on December 29 was not served on Galvin nor were any of the subsequent orders entered by the court served on him

by the clerk of the court. On its face, this lack of notice violated Galvin's due process rights given the court ultimately sanctioned him in his individual capacity. Equally disturbing is that the record reflects that there was no order entered or notice given to USCI or Galvin that the January 12, 2024, contempt hearing was continued to January 17, 2024. The focus of the contempt proceeding shifted on January 12, 2024, to punishing Galvin for criminal contempt, which occurred when he failed to appear at the hearing on January 17, 2024, of which he was not properly noticed. Accordingly, the failure to serve notice of the hearings on Galvin also warrants reversal of the contempt order and sanctions that currently exceed $27,000,000.[11]

## CONCLUSION

For the reasons stated, we conclude that the circuit court abused its discretion and failed to follow applicable law regarding the conduct of criminal contempt proceedings against Galvin, individually. Accordingly, the January 25, 2024, order finding Galvin in contempt individually and the February 8, 2024, order assessing money sanctions against Galvin are reversed. This renders moot any additional arguments raised by Galvin in this appeal, which we decline to address.

---

[11] Arguably, had USCI or Galvin been given appropriate notice of the January 17, 2024, hearing, relief could have been sought from the bankruptcy court pursuant to 11 U.S.C. § 105 of the bankruptcy code.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Jan M. West
Prospect, Kentucky

BRIEF FOR APPELLEE FIRST &
PEOPLE'S BANK AND TRUST
COMPANY:

Jason R. Hollon
Robert E. Maclin, III
Jaron P. Blandford
Lexington, Kentucky

NO OTHER APPELLEE BRIEFS
WERE FILED.