RENDERED:  SEPTEMBER 9, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1417-MR

TYRONE L. CARDWELL                             APPELLANT

                   APPEAL FROM SHELBY FAMILY COURT
v.                HONORABLE S. MARIE HELLARD, JUDGE
                      ACTION NO. 03-J-00104

DALLAS D. BURGIN AND CABINET
FOR HEALTH AND FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY                   APPELLEES

OPINION
VACATING AND
REMANDING

** ** ** ** **

BEFORE:  GOODWINE, MAZE, AND K. THOMPSON, JUDGES.

MAZE, JUDGE:  Tyrone L. Cardwell appeals from an order of the Shelby Family

Court revoking his conditional discharge and imposing the remaining sentence for

contempt based upon his failure to pay child support.  We conclude that the family

court abused its discretion by imposing the sentence without making a finding as to

Cardwell's present ability to meet his child support obligation. Hence, we must vacate the family court's order revoking his conditional discharge and remand this matter for a new hearing.

In 2003, the Cabinet for Families and Children (the Commonwealth)[1] filed a paternity complaint against Cardwell on behalf of the mother, Dallas D. Burgin, alleging that he was the father of J.K.C., born April 2003. Thereafter, the Shelby District Court entered a paternity judgment against Cardwell adjudicating him to be the father of the child. By agreed order entered December 1, 2003, the district court ordered Cardwell to pay child support in the amount $237.00 per month. Over the course of the next 16 years, the Commonwealth filed several motions to hold Cardwell in contempt for failure to pay child support as directed.

In February 2017, the Commonwealth again moved to hold Cardwell in contempt for failure to pay child support. The Commonwealth reported that Cardwell had accrued an arrearage of $1,566.88. At the hearing, Cardwell's counsel represented that Cardwell had been posting payment by wage assignment, but he recently changed jobs and needed to get a wage assignment there.

After further discussion between Cardwell's counsel and the Commonwealth, Cardwell stipulated to contempt. The family court sentenced

---

[1] Throughout this action, the Commonwealth has been represented by the Office of the Shelby County Attorney, as provided by Kentucky Revised Statutes (KRS) 406.021.

Cardwell to serve six months in jail. However, the court conditionally discharged the sentence for two years, subject to the requirement that if he missed one payment, the Commonwealth could file a motion to revoke and Cardwell would go "directly to jail." The family court continued Cardwell's obligation to pay $237.00 per month in child support and directed him to pay an additional $130.00 per month toward any arrearages until paid.

The Commonwealth filed a motion to revoke in January 2018, but the matter was passed to February because a new wage assignment had begun. In February 2018, Cardwell failed to appear, and a bench warrant was issued. Thereafter, Cardwell stipulated to the violation. The family court sanctioned Cardwell with the twenty-five days he had already served and reinstated the conditional discharge on the remaining sentence.

In December 2019, the Commonwealth again moved to revoke Cardwell's conditional discharge based on his failure to remain current with his support obligation. He was arrested on a bench warrant but was released from custody due to COVID-19. The matter was passed several times before another bench warrant was served.

The parties appeared for a hearing on the motion to revoke on June 16, 2021. The Commonwealth noted that Cardwell had an arrearage of $5,736.85, but he had no current obligation because the child reached the age of majority.

Defense counsel asked to allow Cardwell to testify about his ability to pay. Cardwell testified that he had been working immediately prior to his arrest and he would have a job if released. He further testified that he paid $500 per month for rent, about $200 for electricity, and about $300 for food. Cardwell testified that he had not worked during the pandemic because "there are no jobs out there."

The family court concluded that this evidence was not relevant because Cardwell had already stipulated to contempt and he understood that the full sentence could be imposed if he failed to make any payment on his child support. Consequently, the court revoked his conditional release and sentenced Cardwell to serve his remaining 175-day sentence, with credit for time already served. This appeal followed.

Cardwell argues that the family court erred in making any findings as to his present ability to pay. We note that the Commonwealth has not filed a responsive brief to this appeal. CR[2] 76.12(8)(c) "provides the range of penalties that may be levied against an appellee for failing to file a timely brief." *St. Joseph Catholic Orphan Soc'y v. Edwards*, 449 S.W.3d 727, 732 (Ky. 2014). At our discretion, we may "(i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain

---

[2] Kentucky Rules of Civil Procedure.

such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case." CR 76.12(8)(c).

While a party's failure to file a brief may be taken as a confession of error, the imposition of sanctions under this rule is discretionary, not automatic. *Blades v. Commonwealth*, 957 S.W.2d 246, 249 (Ky. 1997). Nevertheless, we conclude that Cardwell is entitled to relief based on the undisputed facts and the law. This Court reviews the family court's decision to revoke probation or conditional discharge for abuse of discretion. *Wills v. Commonwealth*, 396 S.W.3d 319, 322 (Ky. App. 2013). An abuse of discretion occurs when the decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Miller v. Eldridge*, 146 S.W.3d 909, 914 (Ky. 2004) (quoting *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)). More specifically, a court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *Id.* at 915 n.11 (cleaned up).

We agree with Cardwell that the outcome of this case is governed by *Commonwealth, Cabinet for Health & Family Services v. Ivy*, 353 S.W.3d 324 (Ky. 2011). In that case, the Kentucky Supreme Court held as follows:

> A trial court, of course, has broad authority to enforce its orders, and contempt proceedings are part of that authority. *Lewis v. Lewis*, 875 S.W.2d 862 (Ky. 1993). KRS 403.240, moreover, provides that a party's

noncompliance with a support or custody decree "shall constitute contempt of court," and shall be addressed as such. We review the trial court's exercise of its contempt powers for abuse of discretion, *Lewis*, 875 S.W.2d at 864, but we apply the clear error standard to the underlying findings of fact. *Blakeman v. Schneider*, 864 S.W.2d 903 (Ky. 1993).

Contempt sanctions are classified as either criminal or civil depending on whether they are meant to punish the contemner's noncompliance with the court's order and to vindicate the court's authority and dignity, or are meant to benefit an adverse party either by coercing compliance with the order or by compensating for losses the noncompliance occasioned. *Gormley v. Judicial Conduct Commission*, 332 S.W.3d 717, 725-26 (Ky. 2010). Since this proceeding was meant to coerce Ivy's compliance with her child-support obligation and not to punish her, it was civil in nature.

In a civil contempt proceeding, the initial burden is on the party seeking sanctions to show by clear and convincing evidence that the alleged contemnor has violated a valid court order. *See, e.g.*, *Roper v. Roper*, 242 Ky. 658, 47 S.W.2d 517 (1932). If the party is seeking compensation, it must also prove the amount. Once the moving party makes out a *prima facie* case, a presumption of contempt arises, and the burden of production shifts to the alleged contemnor to show, clearly and convincingly, that he or she was unable to comply with the court's order or was, for some other reason, justified in not complying. *Clay v. Winn*, 434 S.W.2d 650 (Ky. 1968). This burden is a heavy one and is not satisfied by mere assertions of inability. *Dalton v. Dalton*, 367 S.W.2d 840 (Ky. 1963). The alleged contemnor must offer evidence tending to show clearly that he or she made all reasonable efforts to comply. *Id.* If the alleged contemnor makes a sufficient showing, then the presumption of contempt dissolves and the trial court must make its determination from the totality of the

> evidence, with the ultimate burden of persuasion on the movant.

*Id.* at 332.

The Court went on to hold that, once a trial court finds a party in contempt, its next task is to fashion a remedy. Where the contempt proceeding is civil, the sanction may serve either to coerce the contemnor to comply with a court order, to compensate a party for losses caused by the contempt, or both. *Id.* at 334. "For the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert the punishment or at any time bring it to an end." *Id.* at 334-35 (citations omitted). The contemnor bears the burden of proving his or her inability to meet the purge condition, but in imposing that burden the court should be mindful of the contemnor's overriding interest in not being required to perform an impossible act. *Id.* at 335.

In this case, the family court took the position that Cardwell's ability to pay would have been relevant at the contempt hearing, but it was not relevant to determine whether Cardwell's conditional discharge should be revoked. The family court reasoned that it had required Cardwell to remain current on his support obligation as part of his conditional release from his sentence for contempt. Consequently, the family court declined to consider whether Cardwell had a present ability to pay, and it did not set any amount to purge the contempt.

But in *Ivy*, the Court emphasized that, for the contempt to retain its civil character, a trial court must impose a purge condition that is within the contemnor's present ability to perform. *Id.* A future failure to pay would not, in and of itself, justify incarceration. Rather, if the contemnor did fail to pay, he would be entitled to notice, a new hearing, and a finding that at that future point in time he had the ability to comply. *Id.* Thus, the family court could not make a future violation a trigger for the imposition of contempt sanctions. Such an attempt would merely be a reaffirmation of the original support order and would still require a finding of present ability to pay at the time the sanction is imposed. *Id.*

The Kentucky Supreme Court recently re-emphasized this holding in *Crandell v. Cabinet for Health and Family Services ex rel. Dilke*, 642 S.W.3d 686 (Ky. 2022), holding that future conduct cannot be made the subject of a pending contempt motion. As in *Crandell*, Cardwell was entitled to notice, a new hearing, and a finding of his present ability to pay at the time the sentence is imposed. *Id.* at 691. We conclude that the family court could not circumvent this requirement by treating a failure to pay as a violation of his conditional release. Otherwise, the family court's sanction would exceed the scope of civil contempt.

We recognize that the family court has given Cardwell several opportunities to remain current with his support obligation even after the finding of

contempt. We further recognize that Cardwell has an obligation to pay child support, and the Commonwealth and the family court were well within their authority to enforce that obligation. Nevertheless, we are constrained to follow the requirements set out by the Kentucky Supreme Court for imposing a sentence on a judgment of contempt. Because the family court failed to make the findings required by *Ivy* and *Crandell*, we must vacate its order imposing the sentence.

Finally, it appears that the family court treated Cardwell's original stipulation to contempt as criminal (or quasi-criminal) in nature. However, there is no indication in the record that he pleaded guilty to a charge of criminal contempt. And even if that were the case, the family court would have been required to comply with the requirements of KRS 439.3106 prior to revoking his conditional discharge. The statute "requires as conditions precedent to revocation that the probationer's failure to comply with the terms of probation constitutes 'a significant risk to [his] prior victims ... or the community at large,' and that the probationer 'cannot be appropriately managed in the community.'" *Commonwealth v. Andrews*, 448 S.W.3d 773, 777 (Ky. 2014) (quoting KRS 439.3106(1)). Thus, even if the contempt order had been criminal in nature, the family court's findings in this case were not sufficient to warrant the revocation of his conditional discharge.

Accordingly, we vacate the order of the Shelby Family Court, and we remand this matter for a new hearing on the motion to revoke in accord with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:

Molly Mattingly
Frankfort, Kentucky

NO BRIEF FILED FOR APPELLEES.