James P. BLAKEMAN, Appellant,

v.

Daniel SCHNEIDER, Judge Jefferson Circuit Court, Appellee,

and

Della Marie Blakeman, Real Party in Interest.

No. 93–SC–321–MR.

Supreme Court of Kentucky.

Oct. 28, 1993.

Samuel G. Hayward, J. Bruce Miller, Anthony L. Schnell, Louisville, for appellant.

Ann B. Oldfather, Teresa T. Eifler, Oldfather & Morris, Louisville, for appellee.

REYNOLDS, Justice.

James Blakeman appeals from the Court of Appeals order denying CR 76.36 relief wherein he had sought a writ of mandamus to vacate an order of confinement issued against him by Judge Daniel Schneider of Jefferson Circuit Court.

The order of Jefferson Circuit Court dated February 1, 1993, which precipitated this original action was an order of arrest for the appellant based upon the court's prior determination that he was in contempt of court for:

> [I]ntentional, deliberate, and fraudulent failure to pay maintenance, failure to deliver spare parts of the Cortez motor home, failure to make payments under the judgment to Mrs Blakeman despite monies available to him, failure to pay Mrs. Blakeman's medical expenses, failure to disclose a (sic) trial, the existence of the Buy–Right assets.

The appellant stipulated that he was in arrears in the neighborhood of $200,000.00 and that no maintenance payments had been made between January 10, 1990, and February 1, 1993. The trial court specifically determined the contempt to be civil in nature,

ordering the petitioner (Blakeman) incarcerated until either $200,000.00 is paid to Della Marie Blakeman, real party in interest, or satisfactory arrangements are made for said payments.

The record of the divorce proceedings between the Blakemans reflects the entry of the Findings of Fact, Conclusions of Law and Judgment; that the parties had net marital estate assets of over $1,259,692, with approximately one-half being allocated to each party; and an award to Mrs. Blakeman in the sum of $1,500 per month as maintenance for a period of 24 months. An amended judgment reduced the net marital estate to $1,138,138.

■ Subsequently at December 1989 hearings, the court entered an order, based on findings of fact and conclusions, that Mr. Blakeman be held in contempt for what the court perceived to be a deliberate and calculated plan on Mr. Blakeman's part to not only deprive Mrs. Blakeman of her maintenance, but also with respect to other creditors of Mr. Blakeman due to the company withdrawals made by Mr. Blakeman shortly before closing the doors of Jasco (a solely owned corporation). It was found that there was clear and convincing evidence of fraud (both express and implied) in an effort to deprive Mrs. Blakeman of that to which she was entitled.

Appellant had due notice of these hearings, but was not present nor was counsel there on his behalf. The record reflected that Mr. Blakeman traveled to New Zealand with his soon-to-be new wife and her child. There was no request for a continuance filed of record and the appellant's most recent counsel, at that time, had withdrawn from representation. The trial court entered a finding that appellant had engaged in enumerated transactions evidencing ability to pay and appellant's motions to terminate/reduce Mrs. Blakeman's maintenance was denied.

After entry of the order hereinabove referred to, appellant filed bankruptcy.

The record contains substantial and sufficient evidence to support a finding of fact that appellant was able to pay the purge amount of $200,000.00 or to make satisfactory arrangements for such payment. Nota-

bly, there were three hearings, September 15, 1989, December 21, 1989, and February 1, 1993, from which Judge Schneider could premise appellant's contempt of the court orders and to consider his ability to pay or plan to pay the purge amount. The unappealed order of January 10, 1990, established contempt and a finding that Blakeman had money available. Additionally, the Trustee in Bankruptcy, a witness in this action, testified that appellant was not allowed a bankruptcy discharge as he continuously failed to account for the money with which he had absconded and refused to obey orders of discovery.

The appellant maintains the appellee (respondent judge) erred by ordering him to jail for civil contempt until he paid the remaining $200,000.00 from his divorce decree to his former wife when the proof reflected no financial ability on appellant's part to pay such a bond in order to purge himself from contempt.

At the most recent hearing (February 1, 1993), appellant contended that the only finding of fact determined by the judge was evidence of a recent tax form which disclosed $9,000–$12,000 annual income on his part and that such evidence justified his argument that he was financially unable to pay the court ordered bond requirements. However, appellant avoided a prior hearing, choosing to travel to New Zealand and thereafter remain outside the Kentucky jurisdiction for three years. It appears from the record that former employees of appellant, to whom he had given several thousand dollars, established, along with appellant's present wife, a similar business located in Indiana. This latter business has employed appellant and appellant's current home is titled in the wife's name as is the stock of the new business.

■ Inability of a contemnor to pay the purge amount is a fact to be determined by the trial court. *Clay v. Winn*, Ky., 434 S.W.2d 650 (1968). We agree that the "(f)indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. Resultantly, the trial court found

that appellant has an ability to pay or plan to pay based upon substantial evidence and therefore Blakeman's argument of inability to pay is not a defense. Appellant had the burden of proving his inability to pay the purge amount and/or the inability to produce a plan of payment. He has simply failed to meet this burden. The finding by the trial court is supported by the record and is not clearly erroneous. A contemnor cannot voluntarily produce his own inability to pay.

The conditional nature of sentences renders actions to be civil contempt proceedings for which indictment and jury trial are not constitutionally required. It is not the fact of punishment, but rather its character and purpose that often serves to distinguish civil from criminal contempt. Courts have inherent power to enforce compliance with their lawful orders through civil contempt. The conditional nature of imprisonment, based entirely upon the contemnor's continued defiance of the court order, justifies holding civil contempt proceedings absent the safeguards of indictment and jury, provided that the usual due process requirements are met. The justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order. *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

The purpose of civil contempt is to coerce rather than punish. Ultimately, then, the defining characteristic of civil contempt is the fact that contemnors "carry the keys of their prison in their own pockets." If the contemnor absolutely has no opportunity to purge himself of contempt, then such imprisonment can be deemed punitive in nature and in the nature of a proceeding for criminal contempt. The United States Supreme Court unequivocally held that a civil contemnor cannot be incarcerated beyond the opportunity to purge himself of his contempt. A contemnor is entitled to representation by counsel and an opportunity to terminate one's incarceration. *Campbell v. Schroering*, Ky.App., 763 S.W.2d 145 (1988).

The inability of a debtor to satisfy a judgment is a fact to be determined by the trial court. Contempt orders against a former husband who has become delinquent in support payments should be limited in their coverage to the amounts the court has previously found are within the ability of the former husband to satisfy. Following a proper determination of his ability to pay, it should be clearly set forth in a finding of fact. The court may properly, in its discretion if it finds petitioner unable to satisfy the entire judgment, order payments be made on such sum over a period of time, which are within the ability of the petitioner to satisfy. *Clay v. Winn, supra.*

Justification for coercive punishment such as imprisonment rests upon the inherent power of courts to punish contempt. Similarly when an order imposing conditional imprisonment of a habeas corpus petitioner was obviously for the purpose of compelling him to testify at trials, discharge of the jury at the conclusion of the trials constituted a final disposition of the cases so as to discharge petitioner from imprisonment for contempt. The primary purpose was not to punish, but rather to compel his obedience to and respect for an order of the court. *Hardin v. Summitt*, Ky., 627 S.W.2d 580 (1982).

A party is not to be punished for contempt for failure to perform an act which is impossible. An inability to comply must be shown clearly and categorically by the defendant, and the defendant must prove that he took all reasonable steps within his power to insure compliance with the order. *Campbell County v. Kentucky Corrections Cabinet*, Ky., 762 S.W.2d 6 (1989).

We determine that the character and purpose of this action clearly renders it a civil rather than a criminal contempt proceeding. The act of disobedience consists solely in refusing to do what had been ordered and not in doing something that had been prohibited. The order imposed conditional imprisonment for the very obvious purpose of compelling the appellant to obey (pay) the order of the court or plan for payment. Utilizing a very old but effective cliche that when the party carries "the keys of their prison in their own pocket," it can be determined that the action is essentially a

civil remedy designed for the benefit of other parties. *Shillitani, supra.* Said otherwise, if appellant had chosen to obey the order, he would not have faced jail.

The Court of Appeals' order denying CR 76.36 relief is affirmed.

All concur.