RENDERED: DECEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0507-ME

JASON DUNN                                                 APPELLANT


          APPEAL FROM BULLITT CIRCUIT COURT
v.         HONORABLE MONICA K. MEREDITH, JUDGE
            ACTION NO. 20-D-00294-002


SARA POGUE                                               APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

JONES, JUDGE: The Appellant, Jason Dunn, appeals from an order of the Bullitt

Circuit Court finding him in contempt for repeatedly contacting the Appellee, Sara

Pogue, in violation of a previously issued protective order.[1] Dunn argues the

---

[1] Pogue did not file an appellee brief. In such situations, Kentucky Rule of Civil Procedure (CR) 76.12(8)(c) permits us to: "(i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case." The facts and issues here are similarly straightforward. Moreover, given its importance for protection of the parties and public, we scrupulously review

contempt order should be reversed because it was based on insufficient and improperly authenticated evidence. Having reviewed the record and being otherwise sufficiently advised, we affirm.

## I. BACKGROUND

In December 2020, Pogue sought a protective order against Dunn, her former romantic partner. Pogue alleged Dunn would yell, follow her around, and block her path. The trial court granted Pogue a three-year protective order, which specifically forbade Dunn from having "any contact or communication" with Pogue. Record (R.) at 21.

In early 2021, Pogue moved the trial court to hold Dunn in contempt for violating the protective order. She alleged that Dunn sent her scores of messages from various accounts in violation of the protective order. Pogue attached hundreds of messages allegedly sent by Dunn to her motion, but only three sets of messages were actually considered at the contempt hearing: 1) printouts of messages sent to Pogue on Facebook by "Imareal Newman" (presumably intended to be a pseudonymous amalgamation of I'm a real new man); 2) a set of Pinterest messages sent from "Thomas Brady," which included a

allegations that a person has violated a protective order. Therefore, we elect to impose no penalty.

-2-

photo of Pogue and Dunn together; and 3) emails sent to Pogue from an account designated dunnsranch@gmail.com.

The trial court held a contempt hearing on April 13, 2021, at which both Pogue and Dunn appeared with counsel.[2] During the twenty-minute hearing, Pogue, the only witness, testified about the three sets of messages. She explained that she received Facebook messages from Imareal Newman's account. Pogue testified that she believed the account to be maintained by Dunn. Pogue's attorney asked how Pogue knew the messages were sent by Dunn and Pogue responded that Dunn had admitted in "Judge Porter's hearings"[3] that he had sent her messages from that account. Video, 4/13/21 at 10:26:07, *et seq*. She also added, without significant elaboration, that the content of the Imareal Newman messages was the same as "all [Dunn's] other fake profiles . . . ." *Id.* The trial court allowed the messages to be introduced into evidence over the objection of Dunn's counsel.[4]

---

[2] Apparently, Dunn was facing separate criminal charges for other conduct in violation of the protective order. At the beginning of the hearing, the trial court noted that it agreed with Dunn's counsel that the contempt hearing could not address the same conduct which had led to criminal charges against Dunn. In other words, the court made plain that the same conduct would not be the basis for both criminal charges and contempt of court. *See* Kentucky Revised Statute (KRS) 403.763(1) (providing in relevant part that "[o]nce a criminal or contempt proceeding has been initiated, the other shall not be undertaken regardless of the outcome of the original proceeding.").

[3] Jennifer Porter is a district judge in Bullitt County.

[4] The court stated it would "allow the documents" to show what Pogue "believes they are" but would later determine "whether we have an admission or not." Video, 4/13/21 at 10:28:18, *et seq*.

Pogue then testified about messages sent to her by "Thomas Brady" on Pinterest. Included in those messages was a photo of Pogue with Dunn. Pogue said that the only person besides herself and Dunn who she thought possessed the photo was the photographer. Pogue testified that she believed Dunn sent the Thomas Brady messages, but Pogue's counsel never asked to admit them. Finally, Pogue testified about a third set of messages, consisting of emails sent to her in late March 2021 from dunnsranch@gmail.com. When asked by her counsel if Pogue knew whether Dunn had used that account before, Pogue responded, "I believe he's had that account for quite a few years." *Id.* at 10:31:13, *et seq*. No relevant follow-up questions on that point were asked (including on cross-examination). When Pogue sought to introduce the emails, Dunn's attorney objected, again arguing they were insufficiently authenticated. The court allowed the emails to be entered as statements of what Pogue believed they were.

After Pogue completed her direct examination, Dunn's counsel conducted a brief cross-examination which lasted less than two minutes and focused on the lack of allegations of physical violence. Dunn did not ask Pogue *any* questions relevant to authenticating *any* messages or attempt to discredit Pogue's assertions that Dunn sent the messages in question. Neither party introduced any other evidence. The court took the matter under submission.

Almost two weeks later, the trial court issued its findings of fact and judgment.  The court adopted Pogue's "uncontroverted" testimony and "denie[d] [Dunn's] objections to the introduction of the messages as hearsay" because they "are messages crafted by [Dunn], he is an adverse party to [Pogue] and the statements are sufficiently authenticated by [Pogue] for the Court to find them to be reliable evidence against [Dunn]."  R. at 1117.  Ultimately, the trial court ordered Dunn to serve 179 days in the Bullitt County Detention Center, with required service of forty-five days of jail time with the remainder probated for two years under the condition that he have no contact with Pogue.  R. at 1119.  The court also ordered Dunn to reimburse Pogue's costs incurred in bringing the contempt motion(s).

This appeal followed.[5]

## II. ANALYSIS

As an initial matter, we must first determine the nature of the contempt order before us.  Contempt is generally defined as "the willful disobedience toward, or open disrespect for, the rules or orders of a court." *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996).  Direct contempt occurs in the presence of the court and may be punished summarily.  *See*

---

[5] The trial court granted Dunn a stay with respect to his jail time service until such time as this appeal is final.

-5-

*Brockman v. Commonwealth*, 185 S.W.3d 205, 208 (Ky. App. 2005). Indirect contempt occurs outside the presence of the court and requires proof to be submitted to the fact finder. *Id.* Because Dunn's allegedly contemptuous conduct was sending messages to Pogue outside of the trial court's presence we are dealing with a case of indirect contempt.

Next, we must examine the contempt order itself to determine whether Dunn was found to be in civil or criminal contempt. As the Kentucky Supreme Court has explained, "the defining characteristic of civil contempt is the fact that contemnors 'carry the keys of their prison in their own pockets.' If the contemnor absolutely has no opportunity to purge himself of contempt, then such imprisonment can be deemed punitive in nature" and thus is criminal contempt. *Blakeman v. Schneider*, 864 S.W.2d 903, 906 (Ky. 1993). Here, Dunn lacked possession of the jailhouse keys as he could do nothing to purge himself of having to serve forty-five days in jail.[6] Thus, we must conclude that Dunn was found to be in indirect criminal contempt.

---

[6] The trial court elaborated on why it was necessary to *punish* Dunn's contemptuous conduct as follows:

> This Court has an obligation, not only to [Pogue] who has demonstrated a significant need for protection from Mr. Dunn, but to the authority of the Court and the sanctity of the laws of this Commonwealth to exercise its power to insure the compliance of those under orders from the Court. Mr. Dunn flouts those orders with each message he sends to [Pogue]. Mr. Dunn demonstrates his disregard for the authority of the Court by engaging in conduct

When reviewing indirect criminal contempt orders, like the one before us, we apply a more searching review than the highly deferential standard of review employed in ordinary civil and direct contempt cases. *Cabinet for Health and Family v. J.M.G.*, 475 S.W.3d 600, 624 (Ky. 2015). "Appellate review of criminal contempt sanctions should be commensurate with the review provided in regular criminal cases of a comparable seriousness, as suggested by the penalties imposed." *Id.* With this more stringent standard of review in mind, we now turn to Dunn's substantive assignments of error.

First, Dunn argues that the trial court should not have allowed Pogue to introduce the printouts of the electronic messages because they were improperly authenticated. He explains that "no foundation whatsoever was laid regarding Ms. Pogue's personal knowledge regarding the circumstances surrounding the making and keeping of the alleged Facebook messages and emails." Appellant's brief, at 3. The fundamental rule is that "[t]angible evidence such as photographs and writings must be authenticated to be admissible." *Brafman v. Commonwealth*, 612 S.W.3d 850, 866 (Ky. 2020). We have rejected an argument that electronic

---

he has repeatedly been notified is a violation of the orders he is under. Mr. Dunn is misguided and sorely in need of persuasive, corrective action.

R. at 1118.

messages require a different analytical rubric. *Kays v. Commonwealth*, 505 S.W.3d 260, 270 (Ky. App. 2016).

KRE[7] 901(a) provides that "authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Our Supreme Court has held that "[t]his [authentication] burden may be met in any number of ways, including circumstantial evidence permitting an inference that the document is what it is represented to be." *Thrasher v. Durham*, 313 S.W.3d 545, 549 (Ky. 2010). In short, though the "threshold for authenticating writings is generally low," the proponent of such evidence must offer "more than mere assertions by a lay witness that they were sent by the criminal defendant." *Brafman*, 612 S.W.3d at 867-68.

Two sets of messages were entered into evidence: 1) Facebook messages from Imareal Newman; and 2) emails from dunnsranch@gmail.com.[8] As to the Imareal Newman Facebook messages, Pogue testified that Dunn had previously admitted to using that account to send her messages. Pogue also testified that the content of the Imareal Newman messages was similar to other

---

[7] Kentucky Rules of Evidence.

[8] Pogue did not seek introduction of the Pinterest messages, even though they contained the arguably damning photograph that only Dunn, Pogue, and the photographer possessed.

messages sent to her by Dunn.[9]  With respect to the dunnsranch emails, Pogue gave unrebutted testimony that Dunn had maintained an account under that name for years.

"Whether there is enough evidence of authenticity to admit evidence is within the discretion of the trial court." *Brafman*, 612 S.W.3d at 866.  We have held that "[e]xercising its considerable discretion, a trial court may admit a piece of evidence solely on the basis of testimony from a knowledgeable person that the item is what it purports to be and its condition has been substantially unchanged." *Kays*, 505 S.W.3d at 270.  That is what occurred here.  Pogue testified to receiving the messages electronically, and she explained why she believed them to have come from Dunn.  This was sufficient to allow introduction of the messages leaving it for the trial court to determine after consideration of all the evidence whether as a matter of fact the messages were actually sent by Dunn.  Thus, we conclude the trial court did not abuse its discretion by admitting the Imareal Newman messages and the dunnsranch emails.

Next, Dunn asserts that there was insufficient evidence adduced to establish that he authored and sent the emails to Pogue in violation of the

---

[9] "[T]he following are examples of authentication or identification conforming with the requirements of this rule:  . . . (4) Distinctive characteristics and the like.  Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."  KRE 901(b)(4).

protective order. Having reviewed the record, we disagree. Pogue's testimony was sufficient to convince a reasonable trier of fact that the emails and messages she received came from Dunn. She testified that the emails and messages were similar to other messages that came from Dunn, that he had previously admitted using the Imareal Newman account to send her messages, and that he had maintained the dunnsranch email account for many years. Dunn offered nothing to call Pogue's testimony on these points into question. Based on Pogue's testimony, we believe the trial court reasonably concluded that Dunn authored and sent the messages in question to Pogue in violation of the protective order barring Dunn from making any contact and/or communicating with Pogue.

## IV. CONCLUSION

For the foregoing reasons, we affirm Bullitt Circuit Court's contempt order.


ALL CONCUR.


BRIEF FOR APPELLANT:        NO BRIEF FOR APPELLEE.

Paul Blaine Hamilton
Bardstown, Kentucky