RENDERED: MARCH 8, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0983-MR

RONALD LUCE                                              APPELLANT

                       APPEAL FROM JEFFERSON FAMILY COURT
v.                 HONORABLE GINA KAY CALVERT, JUDGE
                            ACTION NO. 17-CI-502419

TERESA LUCE AND ARMAND
JUDAH                                          APPELLEES

AND

NO. 2023-CA-0297-MR

RONALD LUCE                                              APPELLANT

                       APPEAL FROM JEFFERSON FAMILY COURT
v.                 HONORABLE GINA KAY CALVERT, JUDGE
                            ACTION NO. 17-CI-502419

TERESA LUCE                                              APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  ACREE, COMBS, AND ECKERLE, JUDGES.

ECKERLE, JUDGE:  These appeals arise from orders and a judgment of the Jefferson Family Court in the dissolution of the marriage of Ronald Luce ("Appellant") and Teresa Luce ("Appellee").  In his first appeal, Appellant argues that the Family Court abused its discretion by holding him in contempt for failure to make payments to Appellee required by Court Orders.  We find substantial evidence to support the Family Court's conclusions that Appellant's failure to make those payments was unjustified, and that he had the ability to meet the purge conditions at the time the Family Court imposed the contempt.

In his second appeal, Appellant challenges the Family Court's division of property and debt relating to the marital business.  We conclude that the Family Court did not abuse its discretion by declining to give Appellant a credit for his prior payments because his actions caused a substantial loss to the value and income of the business.  Likewise, we conclude that the Family Court did not abuse its discretion by assigning Appellant sole responsibility for the tax debt incurred by the business during the period he was its sole shareholder.  Hence, we affirm in both appeals.

## I. Facts and Procedural History

The parties were married in 2002 and separated in 2014. No children were born of the marriage. During the marriage, the parties established a business, RML Properties ("RML"), which managed rental properties. The parties operated RML out of their residence on Rockford Lane in Louisville, Jefferson County, Kentucky. Appellant performed or coordinated the labor associated with the business, while Appellee performed the office work and bookkeeping.

Appellant filed a petition for dissolution of the marriage on August 1, 2017. Over the next three years, the parties attempted to reach agreement over disputed issues. Their business relationship also deteriorated during this time, and Appellant took full control of RML. Although the parties used the RML bank account to pay certain personal expenses, Appellant discontinued paying Appellee's expenses. In addition, RML had accrued significant tax liabilities for which both parties were personally liable.

On February 13, 2020, the Jefferson Family Court signed an Agreed Order ("the 2020 Agreed Order") addressing these issues. In pertinent part, the 2020 Agreed Order required that: (1) the parties immediately contact their accountant to resolve any tax issues by March 1, 2020; (2) the parties discontinue using the RML account for "any questionable expenses," meaning mostly personal, non-business expenses; (3) the parties set aside 30% of RML's gross revenue in a

separate escrow account for tax purposes, with the other legitimate, business expenses taking priority after taxes; (4) each party take $3,000.00 from the remaining balance of the RML account as a distribution "or perhaps income;" and (5) the parties sell the marital residence within 60 days.

Appellant did not comply fully with the terms of the 2020 Agreed Order. Appellant states that RML lost considerable revenue due to the COVID-19 pandemic. The escrow account was never established, and the 30% of gross revenues were not set aside. Appellant cut off Appellee's access to the RML accounts. In September 2020, Appellant unilaterally reduced Appellee's draw on the account to $1,200.00 per month. Appellee entered into a contract to sell the marital residence, but the sale could not proceed due to outstanding state and federal tax liens.

Appellee filed a motion to hold Appellant in contempt for his failure to comply with the 2020 Agreed Order. Appellant responded with a motion to modify the 2020 Agreed Order due to changed circumstances. The Family Court held a hearing on the motions on June 15, 2021. But following the hearing, the parties reached an agreement, which was entered as an Agreed Order on June 21, 2021 ("the 2021 Agreed Order"). Although the Family Court entered the agreement as simply an "Order," it contained the following language:

> Each Party testified and affirmed the above
> accurately expresses their temporary agreement. Each

stated he or she had adequate time to consult with an attorney and is satisfied with the advice received. Each said he or she understands the terms of the above agreement this [sic] will be entered as a Court Order that cannot be later modified.

The 2021 Agreed Order required Appellant to pay Appellee $2,250.00 per month, with the option of either paying the entire amount directly to Appellee or paying $750.00 to the mortgagee on the marital residence and the remaining $1,500.00 paid directly to Appellee. The 2021 Agreed Order also required the parties to conduct a business valuation and determine the amount of their debts. Appellant was required to advance the costs of the valuation. The 2021 Agreed Order also set forth terms requiring the parties to consult a Certified Public Accountant to determine the tax debt owed and addressing the tax liens against the marital residence.

On August 10, 2021, Appellee filed a motion to hold Appellant in contempt for his failure to make the payments required under the 2021 Agreed Order. She also asserted that Appellant was still paying his own, non-business expenses from the RML account. On September 13, 2021, Appellee filed another contempt motion, stating that Appellant refused to sign a contract for the business evaluation.

Appellant moved to cancel the business evaluation and modify the 2021 Agreed Order regarding the payments to Appellee. He stated that all of

RML's receipts are subject to the claims of third-party creditors. He further alleged that neither he nor RML had the resources to pay for the business evaluation or to make the payments required under the 2021 Agreed Order. The Family Court denied this motion without a hearing on November 1, 2021.

The Family Court scheduled a hearing on the remaining motions for January 18, 2022. On February 9, 2022, the Family Court entered an order finding Appellant in contempt. First, the Court found that Appellant failed to sign the contract and pay the fee for the business evaluation as required by the 2021 Agreed Order. The Court found that he provided no reasonable excuse for this failure and that his actions slowed the advance of the dissolution action, wasted the Court's time, and prevented a timely resolution of the property-distribution issues.

Second, the Family Court found that Appellant failed to make the payments required by the 2021 Agreed Order, and that he failed to provide any legitimate excuse for this failure.

> [Appellant] admits his failure to pay in accordance with the June 21, 2021 Order. [Appellant] admits that he is making the entire monthly mortgage payments on the property purchased in 2019 with his girlfriend and the payment is current. [Appellant] admits that he did not set aside escrowed funds for back taxes (estimating that up to 2015, the Parties have back tax liability exceeding $100,000.00), or even open the escrow account Ordered in February 2020; although the clear intent of the Parties in the February 13, 2020 Agreed Order was to cooperate to put aside money and negotiate a settlement of back taxes with the IRS, [Appellant] testified that he did not

-6-

do it, because the Court Order did not specify that the money would be for back taxes.  [Appellant] admits and his exhibits demonstrate that RML is currently setting aside and making advance payments to the IRS of [Appellant]'s own quarterly estimated income taxes. ([Appellant]'s Exhibits, Tabs 20-23).  [Appellant] testified [he] did not previously set aside quarterly estimated taxes in the past.   [Appellant] has been to Florida three times or more in 2021, though he insisted that one trip was paid for by his girlfriend's family as a gift.  [Appellant] admits gambling multiple times with the RML bank card.  He said he takes "business people" gambling, so it is not really a personal use, but [Appellant] showed no evidence of claiming his gambling as a business expense.  [Appellant] denies taking a "full draw" from RML at any time since June, 2021, but he admits using the RML account for personal expenses, his own housing  (RML is operated out of the residence purchased by [Appellant] and his girlfriend, and he admits the girlfriend does not contribute to the payment), his individual income taxes, his pharmacy, mall shopping, on vacations, food, cell phone, car insurance, gambling, and multiple other expenses. [Appellant] admits taking large cash withdrawals from RML's account, but explains that those are business expenses, because they could be "used to pay TJ under the table."  [Appellant] admitted that even when RML lost fees from the client who took property management in-house in 2020, it resulted in only a $1,000.00 drop in monthly management fees earned by RML, and RML still earns $5,000.00 per month in fees from that client alone.  [Appellant] pointed to his bank statements, like the August 31, 2021 bank statement located at [Appellant]'s Tab 23, indicating that RML is still making payments for [Appellee]'s car insurance and cell phone, which RML has always done, while deposits were only $11,000.00, down from nearly $20,000.00 in July, 2021, and over $15,000.00 per month the two previous months (see [Appellant]'s Tab 22, 21, and 20).  [Appellant] provided no bank statements past August, 2021, but he

testified that "since June, 2021, the business has lost money every month" saying the loss has been "probably two to three thousand dollars" per month. This Court has many times been urged to believe in the remarkable coincidence of a jointly-created business failing rapidly, just at the very time when the managing spouse has been ordered to make payments to the other spouse. The Court does not find that the documentary evidence and testimony here provide even colorable support for the occurrence of such a remarkable coincidence in this case, much less clear and convincing evidence. Paying his own optional expenses before paying those Ordered by this Court is not making all reasonable efforts to comply; it is an act of contempt for the authority of this Court and its Orders. The Court finds [Appellant] in contempt of Court for failure to make the payments required by the June 21, 2021 Order without legal justification.

February 9, 2022, Order, pp. 7-9. Record on Appeal ("ROA") 118-120.

In fashioning a remedy for the contempt, the Family Court ordered Appellant to: (1) complete the contract with the business valuation expert and advance the fee within five days of entry of the Order; (2) resume monthly payments to Appellee effective with the payment due February 5, 2022; (3) pay $10,700.00 in past-due amounts owed to Appellee and add an additional $1,070 to the next ten monthly payments due under the 2021 Agreed Order; and (4) pay attorney fees to Appellee's counsel in the amount of $4,770.00 on or before February 11, 2022 ("Contempt Order"). Thereafter, Appellant filed a CR[1] 59.05

---

[1] Kentucky Rules of Civil Procedure.

motion to set aside the finding of contempt, which the Family Court denied on March 3, 2022.

Appellee then filed a new motion to hold Appellant in contempt, stating that he had failed to comply with the Contempt Order. Appellant responded with a motion to stop the business advance payments required under the 2021 Agreed Order, alleging that RML had a negative value, and that any additional advances would exceed the likely value of the business. Appellee disputed Appellant's characterization of the payments as an advance on the property distribution, arguing that they represented her share of income from RML.

The pending matters again came before the Family Court at a hearing on June 21, 2022. The Family Court entered an order on the contempt issues on July 15, 2022. The Family Court rejected Appellant's claims that it was impossible for him to make the payments required under the prior orders. The Family Court further questioned Appellant's insistence on continuing to expend efforts on RML, given his claims that RML had a negative value and was unable to pay his salary. Consequently, the Family Court directed Appellant to resume compliance with its orders set out in the February 9, 2022, order. The Family Court again held Appellant in contempt for his failures to comply with previous orders. The Family Court ordered that Appellant pay all sums due, plus an additional $2,800.00 for Appellee's attorney fees, no later than 60 days from entry

of the order. Finally, the Family Court specified that, if Appellant "has not completely complied with this Order" by that date, he shall be sentenced to 60 days in jail.

Appellant filed a Notice of Appeal from this Order.[2] On November 29, 2022, the Family Court conducted an evidentiary hearing on the remaining matters in the parties' dissolution proceeding. On December 16, 2022, the Family Court issued findings of fact, conclusions of law, and a decree dissolving the parties' marriage.

The findings relevant to this appeal concern the Family Court's conclusions regarding the valuation of RML and the division of its equity and debt. Based on the business evaluation conducted by the Family Court-appointed expert, the Family Court found that RML had a value of $21,000.00 as of December 31, 2021. The Family Court noted that RML is a marital asset, having been built through the joint efforts of the parties from 2006 through 2014. However, the

---

[2] After the 60-day period had passed, the Family Court conducted a hearing to impose the sentence previously announced for non-compliance. Appellant argued that the Family Court lost jurisdiction to hold the sentencing hearing because the contempt issue was on appeal. The Family Court disagreed, but it allowed Appellant additional time to file motions for emergency and intermediate relief in the Court of Appeals. On October 6, 2022, this Court denied his motion for emergency relief. And on October 31, 2022, this Court denied Appellant's motion for intermediate relief to stay the contempt Order, concluding that his impending incarceration did not constitute an irreparable injury. On October 26, 2022, the Family Court imposed the 60-day sentence of incarceration with ten days to serve from jail with work release and 50 days to serve on the home incarceration program with the same release. Although Appellant still challenges the finding of contempt, he does not appeal from the Order imposing the sentence.

-10-

Family Court also found that Appellant has been the sole shareholder of RML since January 2015. The Family Court further found that Appellant "has been undermining the business since at least December, 2019 and taking funds that could be directed into the business for himself." Consequently, the Family Court awarded Appellee 30% of the remaining value of the business, or $6,300.00.

The Family Court recognized that the parties will be jointly liable for all tax debts, penalties, fines, and interests levied against RML through December 31, 2014. The Family Court also noted that each party is individually liable for individual tax debts on flow-through profits from RML up to that date. Likewise, Appellant remains responsible for taxes on flow-through profits after January 1, 2015, and Appellee is responsible for her tax liability as an employee from that point. But since Appellant became the sole shareholder of RML in January 2015, the Family Court assigned him sole responsibility for penalties, fines, and interest from that date forward. To this end, the Family Court directed that Appellant hold Appellee harmless for any of these liabilities.

On December 22, 2022, Appellant filed a motion to "alter, amend, or vacate" the December 16, 2022, Judgment, but specifically cited CR 59.01(a), (d), (e), (f), & (h). The Family Court denied the motion in an Order entered on February 15, 2023. The Family Court concluded that Appellant failed to establish any grounds for a new trial under that rule. Appellant then filed a notice of appeal

from the December 16, 2022, Judgment and the February 15, 2023, Order.  This Court denied Appellee's motion to consolidate the appeals, but directed that that they be heard together pursuant to RAP[3] 2(G).  Additional facts will be set forth below as necessary.

## II.    Appeal No. 2022-CA-0983-MR

In his first appeal, Appellant argues that the Family Court abused its discretion when it found him in contempt for violating the 2020 and 2021 Agreed Orders.  While he concedes that he failed to comply with those Orders, he maintains that his violation was not willful because it was due to circumstances beyond his control.  He also argues that he lacked the ability to comply with either of the Agreed Orders or the purge conditions.  On this latter ground, he takes issue with the Family Court's reliance on RML's gross receipts as evidence of his income and the resources available to him.

This Court recently discussed the requirements for a finding of civil contempt in *Cabinet for Health & Family Services v. R.C.*, 661 S.W.3d 305 (Ky. App. 2023).

> In *Cabinet for Health and Family Services v. J.M.G.*, 475 S.W.3d 600 (Ky. 2015), the Kentucky Supreme Court extensively discussed the nature and scope of a Court's contempt authority.  As an initial matter, the Court defined contempt as "the willful

---

[3] Kentucky Rules of Appellate Procedure.

-12-

disobedience toward, or open disrespect for, the rules or orders of a court." *Id.* at 610 (quoting *Poindexter v. Commonwealth*, 389 S.W.3d 112, 117 (Ky. 2012) and *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996)). All Courts have the authority to sanction contempt and to insist upon respect for its processes and compliance with its rulings and judgments. *Id.* at 611 (citations omitted). Thus, the power of Courts to punish contempt is implicit in the judicial function, "is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them [sic] by law." *Id.* at 611 (citations omitted).

The Court in *J.M.G.* then went on to discuss the often-elusive distinction between civil and criminal contempt. Generally, sanctions imposed to benefit an adverse party – coercive sanctions, for example, or compensatory ones – are deemed civil and are sought and imposed through civil proceedings between the original parties, very often as part of the underlying cause. *Id.* (citations omitted). On the other hand, punitive sanctions – unconditional sanctions not subject to purgation through compliance with an order and that are imposed principally if not purely to vindicate the authority of the Court – are deemed criminal. *Id.* Criminal penalties for contempt require the full range of constitutional due process protections. *Id.* at 611-12. Furthermore, indirect contempt – that is, contempt occurring out of Court or not immediately apparent to the Court – requires an evidentiary hearing. *Id.* at 612. Summary adjudication of indirect contempt is prohibited. *Id.*

. . . .

. . . As noted above, sanctions for civil contempt "are meant to benefit an adverse party either by coercing compliance with the order *or by compensating for losses the noncompliance occasioned*." *Nienaber v. Commonwealth ex rel. Mercer*, 594 S.W.3d 232, 236

-13-

(Ky. App. 2020) (*emphasis added*). In the case of the former, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt. *Id.* But a Trial Court still has discretion to fashion compensatory sanctions, even if they cannot be purged by subsequent compliance with the prior order. *Commonwealth, Cabinet for Health & Fam. Servs. v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011). Rather, payment of the compensatory sanction purges the contempt.

The Court in *Ivy* further discussed the standard of proof for civil contempt.

> In a civil contempt proceeding, the initial burden is on the party seeking sanctions to show by clear and convincing evidence that the alleged contemnor has violated a valid court order. *See, e.g.*, *Roper v. Roper*, 242 Ky. 658, 47 S.W.2d 517 (1932). If the party is seeking compensation, it must also prove the amount. Once the moving party makes out a *prima facie* case, a presumption of contempt arises, and the burden of production shifts to the alleged contemnor to show, clearly and convincingly, that he or she was unable to comply with the court's order or was, for some other reason, justified in not complying. *Clay v. Winn*, 434 S.W.2d 650 (Ky. 1968). This burden is a heavy one and is not satisfied by mere assertions of inability. *Dalton v. Dalton*, 367 S.W.2d 840 (Ky. 1963). The alleged contemnor must offer evidence tending to show clearly that he or she made all reasonable efforts to comply. *Id.* If the alleged contemnor makes a sufficient showing, then the presumption of contempt dissolves and the trial court must make its determination from the

> totality of the evidence, with the ultimate
> burden of persuasion on the movant.
>
> *Id.* at 332.

*R.C.*, 661 S.W.3d at 314-16.

We review the Family Court's imposition of civil contempt for abuse of discretion, but we apply the clear error standard to the underlying findings of fact. *Crandell v. Cabinet for Health & Fam. Servs. ex rel. Dilke*, 642 S.W.3d 686, 689 (Ky. 2022). The Family Court's discretion to impose sanctions for contempt is by no means unlimited, and this Court should not apply a deferential standard of review. *J.M.G.*, 475 S.W.3d at 624. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). More specifically, a Court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004) (emphasis omitted).

Appellant admits that he failed to comply with the 2020 and 2021 Agreed Orders. He also does not dispute the amount owed. Thus, he had the burden of proving that he was unable to comply with those Orders or was otherwise justified in not complying. "An inability to comply must be shown clearly and categorically by the defendant, and the defendant must prove that he

-15-

took all reasonable steps within his power to insure compliance with the order." *Blakeman v. Schneider*, 864 S.W.2d 903, 906 (Ky. 1993) (citing *Campbell County v. Kentucky Corrections Cabinet*, 762 S.W.2d 6, 10 (Ky. 1989)).

It was within the Family Court's province as the fact-finder to determine the credibility of the witnesses and the weight given to the evidence. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008). The record here clearly shows that Appellant agreed to the provisions of the 2020 and 2021 Agreed Orders and then immediately failed to comply fully with those provisions. He blamed RML's declining fortunes and increasing tax debts for his failures. While he proffered evidence to support this claim, the evidence neither categorically showed his inability to comply nor that he was taking all reasonable steps to adhere to his obligations under the Agreed Orders.

Appellant argues that the Family Court erred by relying on RML's gross receipts as proof of his ability to make the payments required by the Agreed Orders. He correctly notes that gross receipts merely indicate the total amounts that RML took in and were substantially offset by the company's obligations. Appellant contends that the Family Court disregarded evidence of his limited personal resources and lack of income from RML. Appellant further contends that the Family Court's reliance on the gross receipts improperly attributed income and resources that were unavailable to him.

But, as quoted above, the Family Court merely used the gross receipts to cast doubt on Appellant's claim that RML suffered a serious reduction in income, at least by 2021. The recorded loss of management fees did not fully account for Appellant's claim that RML lost substantial income after 2019. The Family Court found Appellant's explanations regarding RML's additional losses were not credible. In this regard, the Family Court analysis of the gross receipts was not clearly erroneous.

Similarly, Appellant takes issue with the Family Court's comment in 2022 that he "could earn more money working at a fast-food restaurant[.]" He contends that it was unreasonable for the Family Court to criticize him for continuing to expend efforts on a clearly failing business. However, the Family Court's point was that Appellant's efforts were not consistent with taking all reasonable steps to comply with his obligations under the Agreed Orders.

Moreover, the Family Court believed that Appellant was actively undermining RML to render himself incapable of complying with the Agreed Orders. The Family Court noted that he continued to pay personal expenses out of the RML account even after he agreed to suspend such payments. The Family Court pointed out that Appellant had diverted an RML client to his own personal business. This action resulted in more than $50,000.00 of additional income to Appellant, which he failed to report to the Family Court. And Appellant

prioritized payment of personal and business taxes in a manner that most benefited him at the expense of RML and Appellee. Under the circumstances, the Family Court did not clearly err in finding that Appellant failed to meet his burden of proving that his failures to comply with the Agreed Orders were justified.

In the alternative, Appellant argues that, even if the contempt findings were proper, the Family Court's purge conditions were impossible for him to meet. The purpose of civil contempt is to coerce compliance rather than to punish. *Blakeman*, 864 S.W.2d at 906. The defining characteristic of civil contempt is that contemnors "carry the keys of their prison [sentence] in their own pockets." *Id.* "For the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert the punishment or at any time bring it to an end." *Ivy*, 353 S.W.3d at 334-35. Consequently, the Family Court must also make specific findings of fact concerning the contemnor's ability to pay at the time the sanction is imposed. *Crandell*, 642 S.W.3d at 690. And no matter the Family Court's finding on a present ability to pay, it must not threaten alleged contemnors with coercive remedies for future conduct. *Id.* (citing *Ivy*, 353 S.W.3d at 335).

Here, the Family Court conducted multiple hearings and issued several Orders holding Appellant in contempt, but merely giving him an additional opportunity to comply with prior Orders. In its February 9, 2022, Order, the

Family Court directed Appellant to complete the contract with the business valuation expert, resume monthly payments to Appellee, make additional payments on past-due amounts, and pay Appellee's attorney fees. The Family Court issued similar directives in its July 15, 2022, Order, with the added direction that Appellee may be subject to incarceration for failure to comply within 60 days.

As noted above, Appellant filed his Notice of Appeal after the Family Court found him in contempt but before it imposed the sentence for his failure to make the payments as ordered. He did not separately appeal from the Family Court's Order imposing the 60-day sentence. As a result, we are not directly presented with the question of whether the Family Court abused its discretion by imposing that sentence.

Rather, the question before us is whether the Family Court made sufficient findings in its July 15, 2022, Contempt Order regarding his then-present ability to pay the contempt sanction. The Family Court stated that Appellant "did not present clear and convincing evidence that it was impossible for him to purge himself of this Court's contempt finding." Appellant did not request additional findings on this question pursuant to CR 52.04. Moreover, Appellant bore the burden of proving that he was unable to pay the purge amount either at the time of the Order or within the 60 days allotted. *Crandell*, 642 S.W.3d at 690 (citing *Ivy*, 353 S.W.3d at 333).

In examining his testimony and the business records he introduced, the Family Court characterized Appellant's claims of inability to pay as "disingenuous." Appellant does not show that these findings were clearly erroneous. Furthermore, Appellant does not point to evidence that would have compelled a finding that it was impossible or even impractically difficult for him to satisfy the purge conditions.

"If the courts are to have the power to control participants in the judicial process and effectively administer justice, the power of contempt must be more than a hollow threat." *Murphy v. Commonwealth*, 50 S.W.3d 173, 186 (Ky. 2001). *See also Lanham v. Lanham*, 336 S.W.3d 123, 129 (Ky. App. 2011). In this case, the Family Court had ample basis to find that Appellant persistently refused to comply with his obligations under numerous Orders. The Family Court found that his failures were not justified or excused by an inability to pay. The Family Court determined that the imposition of civil contempt was the only remaining remedy to coerce compliance with its Orders. Even then, the Family Court allotted him additional time to meet his admittedly significant obligations. In light of all these findings, which were supported by substantial evidence, we find no abuse of discretion.

In his last argument in this appeal, Appellant maintains that Appellee breached her duty to mitigate damages. Failure to mitigate damages is a contract

defense designed to reduce damages because the nonbreaching party failed to make reasonable and required efforts to minimize its losses. Dennis J. Wall, "Failure to mitigate damages." *Litig. & Prev. Ins. Bad Faith* § 5:28 (3rd ed.). Appellant does not cite to any dissolution case in which a party has been required to mitigate damages so a former spouse could avoid being held in contempt. *Crowder v. Rearden*, 296 S.W.3d 445, 452 (Ky. App. 2009).[4] In any case, the mere fact that Appellee made the mortgage payments that Appellant was ordered to pay does not amount to a failure to mitigate damages.

### III. Appeal No 2023-CA-0297-MR

In his second appeal, Appellant challenges the Family Court's division of marital property and debts in its December 16, 2022, Judgment. As an initial matter, Appellant argues that the Family Court abused its discretion when it refused to consider his December 22, 2022, motion under CR 59.05 rather than CR 59.01. He states that the motion was clearly styled a "motion to alter, amend, or

---

[4] Appellant cites to language in *Crowder* suggesting that there could be circumstances in which a failure to mitigate damages would be a defense to civil contempt. "Kimberly has not given us good reason to require James to mitigate damages *in this scenario*." *Id.* at 452 (emphasis added). However, the panel in *Crowder* expressly stated that there was no dissolution case that allowed a party to assert failure to mitigate damages as a defense to civil contempt. Likewise, this Court has not found any authority allowing this defense in this situation. Furthermore, the assertion of such a defense would be inconsistent with the purpose of civil contempt as a means to enforce a lawful Court Order. At most, failure to mitigate damages could only serve as a defense to the amount owed and not as a basis to justify non-compliance with a Court Order.

-21-

vacate," and the citation to the CR 59.01 was merely a typographical error. He contends that the Family Court should have addressed the merits of the motion under CR 59.05, and its refusal to do so amounts to an abuse of discretion.

But as the Family Court noted, Appellant's motion never cited to CR 59.05. Indeed, the body of the motion did not reference any of the standards set out in CR 59.05. The motion specifically referenced CR 59.01(a), (d), (e), (f), and (h). The Family Court could not have "clearly known" that he intended the motion to be filed under CR 59.05.

Furthermore, Appellant does not show that this issue was ever presented to the Family Court. Finally, even if the Family Court had reason to know the motion was mistakenly filed under CR 59.01, we cannot say the Family Court was compelled to treat it as a motion to alter, amend, or vacate under CR 59.05. And because Appellant failed to establish grounds for a new trial under CR 59.01, the Family Court did not abuse its discretion by denying the motion for a new trial. *Gibson v. Fuel Transport, Inc.*, 410 S.W.3d 56 (Ky. 2013).

In any event, Appellant directly challenges the Family Court's rulings in its December 16, 2022, Judgment. Generally, a party cannot appeal from the denial of a CR 59.05 motion because that denial does not alter the underlying judgment. *Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019). And in large part, the Family Court's February 15, 2023, Order addressed the merits of Appellant's

-22-

arguments, albeit under CR 59.01 rather than CR 59.05. Consequently, the Family Court's decision to treat his post-trial motion as a motion for a new trial is not determinative to this appeal.

Appellant next argues that the Family Court erred when it classified his prior payments as income distributions, rather than as advance distributions of equity from RML as set out in the Agreed Orders. In its Order denying Appellant's motion for a new trial, the Family Court addressed this issue in detail:

> First, the [Appellant] requests *more specific findings* as to the prior payments made to [Appellee] and the subject of the prior contempt finding. The [Appellant] maintains the Court never made a "decision" regarding the payments made to the [Appellee] by the [Appellant] pursuant to the parties' February 2020 Agreed Order. Were the payments distributions or income?
>
> The [Appellant] argues that if the payments were distributions (payouts in equity to owners in a business) from the business, RML, then the [Appellee]'s award of $6,300 as her percentage of equity in the business should be subtracted from the monies that [Appellant] owes [Appellee] pursuant to the parties' February 2020 Agreed Order, and [Appellee] should owe the [Appellant] $33,722.48 - $6,300.00 = $27,422.48. On the other hand, if the February 2020 Agreed Order distributions were deemed income, the [Appellee] should receive a 1099 on those funds and be responsible for taxes owed on that income.
>
> The [Appellant] further argued that the June 2021 Agreed Order specified the payments made to the [Appellee] were for "temporary advance division of property." Accordingly, the $14,750.00 in payments

-23-

made to [Appellee] by [Appellant] pursuant to this Order should have been credited to the [Appellant] as an advance division of property. And the [Appellant] should either be credited a[n] additional $33,722.48 in payment of equity in the business, or the [Appellee] should be responsible for income taxes on those monies.

The [Appellant] requests that the Court *amend its Decree* and in its division of assets credit the [Appellant] for the $14,750.00 he has already paid to the [Appellee]. The [Appellant] further requests a finding regarding the funds allocated to the [Appellee] in the February 2020 Order; those funds are either a business distribution in which case [Appellant] should be credited an additional $33,722.48 or income to the [Appellee] in which case she should be responsible for the taxes on those monies.

Insofar as the Court is concerned the $33,722.48 is income to the [Appellee]. That is supported by the [Appellant]'s testimony and the [Appellant]'s tax accountant's testimony. Both witnesses testified that the [Appellant] was the sole owner of the business since 2014 and the [Appellee] was an employee.

The "temporary advance division of property" from the June 2021 Agreed Order was offset by the [Appellant]'s inability to be honest with this Court. [Appellant] earned an additional $60,000.00, or more, income that he repeatedly failed to disclose while arguing to this Court, under oath, that he wasn't making enough money to meet the obligation he set for himself in the Parties' 2021 Agreed Order and supporting his testimony with documents showing much reduced income from the business.

The [Appellant] blocked the [Appellee]'s access to the business (she was office manager) in January 2020. He concealed the existence of an enormous tax debt against the former location of the business, the Rockford Lane [marital residence] property.

The [Appellant] agreed on the record at the parties' February 2022 contempt hearing that he had used RML's income as his own personal income; paying the full mortgage on the home he purchased with his girlfriend; paying for vacations; taking cash advances; paying personal bills; and gambling using the RML credit card. The [Appellant], per his own testimony, treated RML's income as his own personal treasure chest, admittedly using funds from the business for a myriad of personal expenses so he had no monies left to pay [Appellee] her income from the business.

Since the [Appellee]'s income from the business was abruptly ended, the [Appellant] agreed to a monthly payment to her. This payment decreased because of the COVID-19 shutdown – work from home scenario of many of their clients. The [Appellee] agreed to accept less money. The [Appellant] was still "unable" to make those payments. The [Appellee] was left in a large financial hole that the [Appellant] dug for her. The [Appellant] always managed to pay himself and his personal expenses, just not the [Appellee]'s.

Knowledge of the terms of the February 13, 2020 Agreed Order are helpful in understanding the provisions of the June 21, 2021 Order and the extent to which [Appellant] has procured settlement with promises made on the eves of hearings scheduled in this matter, then failed to comply with his own agreements, incorporated into Court Orders.

At the November 29, 2022 hearing it was discovered that the [Appellant] was actively undercutting the business, RML, by accepting a personal contract with one of the RML's clients; funneling monies that should have gone into the company's coffers to himself. The [Appellant] admitted lying to the Court under oath about the very existence of this underhanded activity and its income. He also apparently lied to the IRS and actively attempted to hide this transaction from the Court because

> he received no records of that income for the tax year 2021, by agreement with the contractor.
>
> The Court has many times been urged to believe in the remarkable coincidence of a jointly-created business failing rapidly, just at the very time when the managing spouse has been ordered to make payments to the other spouse.

February 15, 2023, Order Denying Motion for New Trial. ROA 389-92.

Appellant urges that the Family Court "interjected false facts into the record to support its ruling." However, he does not demonstrate that the Family Court's factual findings were clearly erroneous or unsupported by the record. Appellant further argues that the Agreed Orders amount to settlement agreements, and the Family Court was not authorized to modify the parties' express agreements regarding those payments. Consequently, he contends that the Family Court erred in modifying the parties' Agreed Orders to recharacterize the advance property distribution payments as income distribution payments.

But in his December 22, 2022, motion, Appellant did not assert that the classification of the payments in the Agreed Orders constituted an adoption of a settlement agreement under KRS[5] 403.180(2). He merely argued that he was entitled to a credit for those payments against the prospective division of equity in RML. Because this question was not raised or adjudicated before the Family

---

[5] Kentucky Revised Statutes.

Court, Appellant cannot raise it for the first time on appeal. *Fischer v. Fischer*, 197 S.W.3d 98, 102 (Ky. 2006).

Furthermore, the parties reserved the ultimate issues concerning the division of marital property and debt for the Family Court to adjudicate finally. KRS 403.190(1) directs Courts to divide the marital assets in "just proportions," considering all relevant factors including: "(a) [c]ontribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker; (b) [v]alue of the property set apart to each spouse; (c) [d]uration of the marriage; and (d) [e]conomic circumstances of each spouse when the division of property is to become effective[.]" However, the statute does not specify how much weight should be given to each factor. In addition, a "just" division is not necessarily an equal division. *Stipp v. St. Charles*, 291 S.W.3d 720, 726 (Ky. App. 2009); and *Lawson v. Lawson*, 228 S.W.3d 18, 21 (Ky. App. 2007). The Family Court has broad discretion to divide marital assets, and its determination of what constitutes a just division will not be disturbed on appeal absent an abuse of that discretion. *Hempel v. Hempel*, 380 S.W.3d 549, 553 (Ky. App. 2012).

As set forth above, RML was a marital asset subject to division. Without doubt, the business suffered substantial losses in value during the pendency of the dissolution action. By the time the Family Court held the evidentiary hearing on November 29, 2022, the value of RML was greatly

-27-

diminished, leaving very little marital interest to divide. In addition, these losses and Appellant's failure to comply with the 2020 Agreed Order resulted in a substantial loss of income that would otherwise have gone to Appellee.

The Family Court expressly found that Appellant was responsible for those losses either through mismanagement of the business or by deliberately undermining the business. Although Appellee did not make an express dissipation claim, the Family Court could legitimately consider Appellant's conduct in causing the losses to RML. Under these circumstances, the Family Court was not required to accept the 2021 Agreed Order's characterization of the prior payments as "temporary advance division[s] of property." Therefore, we cannot find that the Family Court abused its discretion by declining to give Appellant a credit for the partial payments he made under the 2020 and 2021 Agreed Orders.

Finally, Appellant argues that the Family Court abused its discretion in awarding Appellee a portion of RML but making Appellant solely responsible for its debt. We review a trial court's decisions regarding division of marital debt for abuse of discretion. *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 523 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018). Furthermore, there is no presumption that debts incurred during the marriage are marital. Rather, the party claiming that a debt is marital has the burden of proof. *Id.* In making this determination, the Family Court should consider receipt of

-28-

benefits, the extent of participation, whether the debt was incurred to purchase assets designated as marital property, whether the debt was necessary to provide for the maintenance and support of the family, and any economic circumstances bearing on the parties' respective abilities to assume the indebtedness. *Id.*

Appellant argues that the RML's tax liability should be considered marital, and that it was inequitable to assign that debt wholly to him. The Family Court agreed that the IRS will probably hold both parties liable for the debt. But the Family Court also noted that Appellant is listed as the sole shareholder of RML after December 31, 2014, and Appellee was only an employee after that point. The Family Court concluded that the post-2014 tax liability was incurred solely through the actions of Appellant, and therefore he alone should be assigned that debt.

We agree with the Family Court's analysis. At the hearing, Appellant's accountant testified that RML is a "Subchapter S" corporation, meaning that any profits or losses flow through to individual shareholders and are reported on their tax returns. *See* 35 Am. Jur. 2d *Federal Tax Enforcement* § 408. However, RML is required to file taxes and to report those profits or losses to the IRS. The accountant testified that Appellant was allocated all flow-through profits from RML from 2014 to 2017. He also testified that Appellant was required to report any of his personal expenses paid by RML as income.

-29-

While Appellant was required to pay taxes on those profits and expenses, both parties admitted to joint responsibility for the tax debt. But as noted, Appellant was the sole shareholder of RML after 2014, and he locked Appellee out of the business operations after 2019. In addition, Appellant failed to set aside revenue to pay the tax debt as required by the 2020 Agreed Order. The Family Court reasonably concluded that Appellant was responsible for the incursion of the tax debt, interest, and penalties. Therefore, the Family Court did not abuse its discretion by requiring Appellant to hold Appellee harmless for RML's tax liabilities.

## IV. Conclusion

Accordingly, we affirm the July 15, 2022, Order of the Jefferson Family Court holding Appellant in contempt, and the December 15, 2022, Judgment of the Jefferson Family Court dividing the marital property and debts. Given this ruling, we deny Appellant's motion to strike as moot.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Allison Spencer Russell
Shanna R. Ballinger
Louisville, Kentucky

BRIEFS FOR APPELLEE TERESA LUCE:

Armand I. Judah
Louisville, Kentucky